PEATROSS, J.
 

 | defendant, Jesse Wade Langston, was convicted of attempted second degree murder and sentenced to 35 years’ imprisonment at hard labor, without possibility of probation, parole or suspension of sentence. Defendant now appeals. For the reasons stated herein, the conviction and sentence of Defendant are affirmed.
 

 FACTS
 

 Defendant was involved in a relationship with the victim, Jennifer Maness, from 2002 through 2006. The victim and Defendant, who had a child together, frequently separated and reconciled. The victim testified that, during their separations, she often moved out of the residence she shared with Defendant only to reconcile and move back in later out of fear. According to the victim’s mother, the relationship between her daughter and Defendant was “very violent.”
 

 In 2006, Defendant’s violent behavior toward the victim escalated and the police became involved on several occasions. On January 13, 2006, the victim spent an evening with friends to celebrate her birthday. The group ate at Outback restaurant and then went to a bar in Bossier City. During the evening, Defendant sent several text messages to the victim, demanding to know her whereabouts, but she ignored the messages. Eventually, Defendant tracked down the victim at a bar where he approached her from behind and pinched her. Then, Defendant began pulling the victim by her wrists, attempting to force her to leave the bar with him. The police were promptly called and Defendant was arrested. The victim later dropped the charges, explaining that she did so because | ¿Defendant was released from jail the next day and “wouldn’t leave me alone.”
 

 A second incident occurred on March 15, 2006, after the victim and Defendant had broken up and the victim went to Defendant’s residence to gather some of her belongings. Defendant was talking on his phone and the victim was sending text messages to her aunt. Believing the victim was “texting another guy,” Defendant slapped the victim across the face and threw her against the wall. Two days later, the victim filed a police report detailing the incident.
 

 According to the victim, another violent incident occurred sometime between March and November 2006, when Defendant followed the victim after work, forced
 
 *711
 
 her to pull her car- over and tried to make her get out of the car. The victim stated that “whenever I sped off, he hit the side of my car and it was just — it was nonstop. He wouldn’t — he wouldn’t stop following me. He wouldn’t stop calling me.”
 

 Several months later, the victim and Defendant purchased a house together and were resuming them relationship. Then, on December 7, 2006, the victim looked through Defendant’s cell phone contacts and noticed “at least 50 girls’ names and [phone] numbers.” Since Defendant had previously been unfaithful to the victim on many occasions, the victim told Defendant she was leaving the relationship. Apparently not taking well to the victim’s decision to leave him, Defendant threw the victim on the ground, placed her in a choke hold, held a screwdriver to her throat and threatened to kill her if she called the police.
 

 hThat same day, the victim left the residence and terminated the relationship. Immediately thereafter, Defendant began stalking and sending text messages to the victim, threatening to kill her and her family. Defendant’s text messages to the victim, which were admitted into evidence and discussed at trial, included statements such as “[djon’t go to sleep because you won’t wake up” and “[fjirst I’m going to kill [your sister], then you, then your piece of shit mom, and your scared ass dad.”
 

 A few weeks later on December 26, 2006, Defendant waited for the victim after work and followed her onto the interstate as she began driving home for the day.
 
 [1]
 
 The victim realized Defendant was following her when she noticed his vehicle’s distinctive bright blue “HID-type” lights in her rearview mirror. The victim immediately picked up her cell phone to call the police; but, before she could make the call, Defendant rammed the passenger side of his vehicle into the driver’s side of the victim’s vehicle, forcing her onto the side of the road. Attempting to avoid Defendant’s vehicle, the victim slammed on her brakes; nevertheless, she collided with Defendant’s vehicle, who then steered into the ditch. Managing to maneuver her vehicle back toward the interstate, the victim continued driving and dialed the police. As the victim drove away, she saw that the vehicle that rammed into hers was a black SUV. The victim then met up |4with the police at a service station where she informed them of the incident and filed a formal report.
 

 Officer B.J. Sanford of the Bossier City Police Department participated in Defendant’s arrest later that evening. Officer Sanford testified that the damage and traces of paint on Defendant’s vehicle matched the damage and traces of paint on the victim’s vehicle. Officer Sanford also testified that he noticed Defendant’s vehicle was wet and dripping although the ground was dry and it had not rained that day. Officer Sanford opined that this evidence suggested that someone had recently tried to wash paint smears off of Defendant’s vehicle. The police arrested Defendant after finding him in an apartment in Shreveport, hiding behind a re
 
 *712
 
 frigerator. During the altercation, Defendant attempted to disarm one of the arresting officers, so he was shot with a “less than lethal round” or a “beanbag round.” After Defendant was arrested and advised of his Miranda rights, Defendant remained silent when the officers asked to interview him.
 

 When Defendant arrived at the Shreveport city jail, one of his “bedmates” for a few days was inmate Kevin Larue. Mr. Larue testified that Defendant described the December 26, 2006 incident to him stating that he had intended to run the victim off the road and kill her. Defendant further explained to Mr. Larue that he would rather “see his ... girlfriend and daughter dead than to see his daughter wind up with his mother-in-law.” Since Mr. Larue knew the victim’s mother, Georgia Myers, who is a Bossier City jailer, he relayed Defendant’s statements to Ms. Myers. During the trial, Mr. Larue testified for the State who bolstered his account by eliciting | ^detailed testimony that Defendant told Mr. Larue that, on the night he was arrested, he had been hiding behind a refrigerator and was shot with a beanbag round. According to the State, Mr. Larue’s credibility was strengthened when he accurately recounted these details of Defendant’s arrest because they were not public knowledge and could have only been learned from Defendant.
 

 On July 6, 2007, Defendant was charged with attempted second degree murder by bill of information.
 
 [2]
 
 On August 14, 2007, the State provided notice to the court and Defendant of its intent to use at trial evidence of Defendant’s prior acts of domestic violence against the victim. The trial court ruled that such evidence was admissible. On October 28, 2007, after a jury trial, Defendant was found guilty as charged by eleven of twelve jurors. On March, 18, 2008, Defendant was sentenced by the trial court to 27 years’ imprisonment at hard labor, without benefit of parole, probation or suspension of sentence.
 

 On February 4, 2008, the State filed a habitual offender bill of information. After a hearing on the habitual offender bill of information, the court found Defendant to be a habitual offender and vacated its original sentence, re-sentencing Defendant to 35 years’ imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. The trial court denied Defendant’s motion for reconsideration, motion for | (ipost-verdict judgment of acquittal and motion for a new trial. This appeal ensued.
 

 DISCUSSION
 

 Assignment of Error Number One (verbatim):
 
 The district court erred in denying the motion for post-verdict judgment of acquittal as the evidence at trial was insufficient to prove that Appellant had the requisite intent to kill.
 

 According to the defense, the victim offered a less than certain identification of Defendant’s car and the State offered no scientific link between the victim’s vehicle and Defendant’s vehicle. Defendant argues that his intent cannot be established solely through evidence of the tumultuous relationship between himself and the victim and the post hoc statement made by Defendant to Mr. Larue. Additionally, Defendant asserts that his statement to Mr. Larue only establishes his willingness to characterize himself as having no regard for the victim’s life and was, therefore,
 
 *713
 
 insufficient to prove his specific intent to kill.
 

 To tbe contrary, the State cites applicable law and notes that evidence was submitted at trial showing Defendant’s history of violence and threats against the victim. Additionally, the State introduced evidence that Defendant fled from the scene of the incident, hid from the police and attempted to avoid apprehension. The State argues that this evidence, in addition to Defendant’s overt act of ramming his vehicle into the victim’s vehicle while she was driving onto the interstate, indicates that Defendant possessed the specific intent to kill.
 

 The question of sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal.
 
 State v. Howard,
 
 31,807 (La.App.7 2d Cir.8/18/99), 746 So.2d 49,
 
 writ denied,
 
 99-2960 (La.5/5/00), 760 So.2d 1190. When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under
 
 Hudson v. Louisiana,
 
 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in a light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt.
 
 State v. Hearold,
 
 603 So.2d 731 (La.1992);
 
 State v. Bosley,
 
 29,-253 (La.App. 2d Cir.4/2/97), 691 So.2d 347,
 
 unit denied,
 
 97-1203 (La.10/17/97), 701 So.2d 1333.
 

 This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Hill,
 
 42,025 (La.App. 2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529;
 
 State v. Gilliam,
 
 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508,
 
 writ denied,
 
 02-3090 (La. jn/14/03),s 858 So.2d 422. The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence.
 
 Jackson v. Virginia, supra.
 

 In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Wiltcher,
 
 41,981 (La. App. 2d Cir.5/9/07), 956 So.2d 769;
 
 State v. Burd,
 
 40,480 (La.App. 2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 06-1083 (La.11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense by Defendant.
 
 State v. Robinson,
 
 36,147 (La.App. 2d Cir.12/11/02), 833 So.2d 1207;
 
 State v. Ponsell,
 
 33,543 (La.App. 2d Cir.8/23/00), 766 So.2d 678,
 
 writ denied,
 
 00-2726 (La.10/12/01), 799 So.2d 490.
 
 See also State v. Johnson,
 
 96-0950 (La.App. 4th Cir.8/20/97), 706 So.2d 468,
 
 writ denied,
 
 98-0617 (La.7/2/98), 724 So.2d 203,
 
 cert. denied,
 
 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999).
 

 Specific intent is the state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to
 
 *714
 
 follow his act or failure to act. La. R.S. 14:10(1);
 
 State v. Lindsey,
 
 543 So.2d 886 (La.1989),
 
 cert. denied,
 
 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990);
 
 State v. Davies,
 
 35,783 (La.App. 2d Cir.4/5/02), 813 So.2d 1262,
 
 writ denied,
 
 02-1564 (La.5/9/03), 843 So.2d 389;
 
 State v. Ellis,
 
 28,282 (La.App. 2d Cir.6/26/96), 677 So.2d 617,
 
 writ denied,
 
 96-1991 (La.2/21/97), 688 So.2d 521. Specific intent to commit a crime is ban element of an attempted offense. La. R.S. 14:27. Hence, an attempt to commit second degree murder must rest upon proof that the offender actively desired to kill a human being and that the offender committed or omitted an act for the purpose of and tending directly toward accomplishing his objective. La. R.S. 14:10, 14:27, 14:30.1;
 
 See State v. Parish,
 
 405 So.2d 1080 (La.1981);
 
 State v. Cheatham,
 
 38,413 (La.App. 2d Cir.6/23/04), 877 So.2d 164,
 
 writ denied,
 
 04-2224 (La.6/24/05), 904 So.2d 717.
 

 Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1);
 
 State v. Draughn,
 
 05-1825 (La.1/17/07), 950 So.2d 583,
 
 cert. denied,
 
 — U.S. -, 128 S.Ct. 537, 169 L.Ed.2d 377.
 
 See also State v. Allen,
 
 41,-548 (La.App. 2d Cir.11/15/06), 942 So.2d 1244,
 
 writ denied,
 
 07-0530 (La. 12/7/07), 969 So.2d 619. The determination of whether the requisite intent is present in a criminal case is for the trier of fact.
 
 State v. Huizar,
 
 414 So.2d 741 (La.1982);
 
 State v. Hill, swpra.
 
 Flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience.
 
 State v. Durden,
 
 36,842 (La.App. 2d Cir.4/9/03), 842 So.2d 1244,
 
 writ denied,
 
 03-1350 (La.11/26/03), 860 So.2d 1131.
 

 In this case, evidence was introduced showing that Defendant physically assaulted the victim several times. Additionally, evidence was submitted indicating that Defendant had made threats against the victim several times, specifically, threatening to kill the victim. Most notably, Defendant committed the blatantly violent act of ramming his vehicle into the victim’s vehicle while she was driving onto the interstate. Defendant | plater made statements that this act was an attempt to kill the victim. Finally, after attempting to kill the victim, Defendant fled the scene of the crime, hid from the police and attempted to avoid apprehension. The evidence as to Defendant’s conduct and the circumstances giving rise to the charge was, therefore, sufficient to allow a rational trier of fact to infer Defendant’s specific intent.
 

 Defendant further argues that he was not adequately identified by the State as the perpetrator. We disagree. Uncontro-verted testimony established that the damage on Defendant’s vehicle matched the damage on the victim’s vehicle. Such evidence, even absent the State’s introduction of scientific evidence, was sufficient support for the conclusion that Defendant was the driver who rammed into the victim’s vehicle as she drove onto the interstate. We find that the evidence was sufficient to allow a reasonable fact finder to find Defendant guilty beyond a reasonable doubt.
 

 This assignment is without merit.
 

 Assignment of Error Number Two (verbatim):
 
 The trial court committed plain error in not precluding the state from making reference to post-Miranda silence on the part of the Appellant.
 

 Defendant argues that it was reversible error for the trial judge to allow testimony referring to Defendant’s post-arrest silence because it affected the fundamental fairness of the proceedings. At trial, Detective Sanford gave the following testimony regarding his interaction with Defendant post-arrest:
 

 
 *715
 
 Q. All light. Mr. Langston never made any statement to you about this incident did he?
 

 A. No, sir, he would not.
 

 |nQ. None at all?
 

 A. No, sir, he refused — -the night he was brought from Caddo jail to our jail I came up there and he said he didn’t want to talk to me so we terminated the interview.
 

 Q. All right and you’re aware that’s his constitutional right not to—
 

 A. Yes, sir.
 

 Q. —give any statement. And when he told you he didn’t want to talk you stopped at that point?
 

 A. Yes, sir.
 

 The record does not reflect that defense counsel made any objection to this testimony. In his supplemental brief, Defendant admits to defense counsel’s failure to make a contemporaneous objection to the line of questioning. It is Defendant’s position that, although defense counsel failed to object to the testimony regarding Defendant’s post-arrest silence, the trial court had a duty to intervene and stop the questioning to preserve the fairness of the proceedings. Defendant also asserts that it is the State’s responsibility to refrain from exploiting the possibility that defense counsel might miss obvious errors during trial.
 

 The State argues that, since defense counsel failed to make a contemporaneous objection to the testimony during trial, Defendant is procedurally barred from raising the issue. We agree.
 

 A new basis for an objection cannot be raised for the first time on appeal. La. C. Cr. P. art. 841;
 
 State v. Cressy,
 
 440 So.2d 141 (La.1983);
 
 State v. Sims,
 
 40,300 (La.App. 2d Cir.10/26/05), 914 So.2d 594;
 
 State v. O’Neal,
 
 501 So.2d 920 (La.App. 2d Cir.1987),
 
 unit denied,
 
 505 So.2d_|_2ll39 (La.1987). La. C. Cr. P. art. 841 provides that “[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” The rule requiring contemporaneous objection serves two purposes. First, the rule prevents a defendant from withholding objections to errors, which might have been corrected at trial, with the intention of resorting to such errors on appeal.
 
 State v.
 
 Mart, 419 So.2d 1216 (La.1982);
 
 State v. Thomas,
 
 27,507 (La. App. 2d Cir.12/6/95) 665 So.2d 629,
 
 unit denied,
 
 96-0119 (La.4/8/96), 671 So.2d 333. Second, the rule promotes judicial efficiency.
 
 Id.
 

 La. C. Cr. P. art. 920(2), however, contains an exception to the contemporaneous objection rule which provides that an error patent,
 
 i.e.,
 
 “[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence,” shall be considered on appeal.
 
 State v. Paben,
 
 43,415 (La.App. 2d Cir.8/13/08) 990 So.2d 123. Additionally, the Louisiana Supreme Court has carved out jurisprudential exceptions to the rule requiring contemporaneous objection.
 
 State v. Montoya,
 
 340 So.2d 557 (La.1976);
 
 State v. Williamson,
 
 389 So.2d 1328 (La.1980);
 
 State v. Green,
 
 493 So.2d 588 (La.1986);
 
 State v. Arvie,
 
 505 So.2d 44 (La.1987). The Supreme Court reasoned that these exceptions are similar to the “plain error” rule provided in F.R.C.P. Rule 52(b) which states that: “[a] plain error that affects substantial rights may be considered even though it was not brought to the court’s attention.”
 
 State v. Thomas, supra.
 
 Errors that affect substantial rights of the accused are renewable by the appellate court, even absent contemporaneous | ^objection, to preserve the “fundamental requirements of due process.”
 
 State v. Williamson, supra; State v. Green, supra.
 
 The exception to the
 
 *716
 
 contemporaneous objection rule is not a “plain error rule of general application.”
 
 State v. Arvie, supra.
 
 To fall under the exception, the error must “east substantial doubt on the reliability of the fact-finding process.”
 
 Id.
 

 It constitutes fundamental unfairness and deprivation of due process to allow an arrestee’s silence to be used to impeach an explanation subsequently offered at trial.
 
 Doyle v. Ohio,
 
 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Where the defendant does not take the stand, even less justification exists for the state to call attention to his silence at the time of arrest because an argument cannot be made that the defendant was under cross-examination and, therefore, fair game for impeachment.
 
 State v. Montoya, supra.
 
 A
 
 Doyle
 
 error is subject to a harmless error review.
 
 Brecht v. Abrahamson,
 
 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). The harmless error inquiry is “whether the guilty verdict
 
 actually rendered
 
 in this trial was surely unattributable to the error.”
 
 Sullivan v. Louisiana,
 
 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). A
 
 Doyle
 
 violation that is not harmless under this harmless error test constitutes reversible error.
 
 Brecht v. Abrahamson, supra; Sullivan v. Louisiana, supra.
 

 In the case
 
 sub judice,
 
 defense counsel failed to object to the state-elicited testimony regarding Defendant’s post-arrest invocation of the right to remain silent. Where Defendant elects not to testify, the pertinent inquiry is whether the State’s reference to Defendant’s post-arrest silence was an | terror which “casts substantial doubt on the reliability of the fact-finding process” by virtue of the fact that Defendant did not take the stand at trial.
 
 State v. Arvie, supra; State v. Montoya, supra.
 
 If so, then the exception to the contemporaneous objection rule would apply.
 
 See State v. Williamson, supra; State v. Green, supra; State v. Arvie, supra.
 
 If the exception applies, then admission of testimony referencing Defendant’s post-arrest silence would be subject to this court’s “harmless error” analysis.
 
 Sullivan v. Louisiana, supra; Brecht v. Abrahamson, supra.
 

 The record of the testimony regarding Defendant’s post-arrest silence reflects that the State, after having briefly elicited the fact that Defendant had refused to give a statement to the testifying officer, clarified: “[y]ou’re aware that’s his constitutional right not to ... give any statement.” The testifying officer answered in the affirmative, confirming that the interview with Defendant had been terminated in accordance with Defendant’s constitutional rights. Thus, any negative inferences which may have been drawn from the testimony as to Defendant’s guilt were limited by the reference to Defendant’s constitutional right to remain silent post-arrest. This testimony, although improper under
 
 Doyle,
 
 did not rise to such a level that it east substantial doubt on the reliability of the fact-finding process.
 
 Doyle v. Ohio, supra; State v. Arne, supra; State v. Montoya, supra.
 
 We conclude, therefore, that the error did not fall under an exception to the rule requiring contemporaneous objection and, thus, is not reviewable by this court.
 

 This assignment of error is without merit.
 

 |
 
 ^Assignment of Eiror Number Three (verbatim):
 
 Appellant was denied the effective assistance of counsel when defense counsel failed to object or to seek a mistrial or other relief when the state made reference to post-Miranda silence on the part of the Appellant.
 

 Defendant argues that, had trial counsel objected to the testimony referenc
 
 *717
 
 ing Defendant’s post-arrest silence, a mistrial would have been granted pursuant to La. C. Cr. P. art. 770 and the outcome of the proceedings would have been different. According to Defendant, ineffective assistance of counsel is clear from the record.
 

 La. C. Cr. P. art. 770 provides in pertinent part:
 

 [[Image here]]
 

 [U]pon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to ... [t]he failure of the defendant to testify in his own defense.
 

 La. C. Cr. P. art. 771 provides in part: * * *
 

 [I]n the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
 

 (1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
 

 (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
 

 A claim of ineffective assistance of counsel is properly raised at the trial court level in an application for post-conviction relief (“PCR”) because doing so creates the opportunity for a full evidentiary hearing under La. C. 11fiCr. P. art. 930.
 
 State ex rel. Bailey v. City of West Monroe,
 
 418 So.2d 570 (La.1982);
 
 State v. Ellis,
 
 42,520 (La.App. 2d Cir.9/26/07), 966 So.2d 139,
 
 writ denied,
 
 07-2190 (La.4/4/08), 978 So.2d 325. In the interest of judicial economy, however, a claim of ineffective assistance of counsel may be resolved on direct appeal when the record is sufficient.
 
 State v. Ratcliff,
 
 416 So.2d 528 (La.1982);
 
 State v. Willars,
 
 27,394 (La.App. 2d Cir.9/27/95), 661 So.2d 673.
 

 The Sixth Amendment to the U.S. Constitution mandates that a defendant in a criminal proceeding have effective assistance of counsel.
 
 State v. Wry,
 
 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffective assistance of counsel is analyzed under the two-prong test developed by the United States Supreme Court in
 
 Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must show that counsel’s performance was deficient.
 
 Strickland v. Washington, supra.
 
 The relevant inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases.
 
 Id.
 
 The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at the time of the occurrence.
 
 Id.
 
 A reviewing court must give great deference to trial counsel’s judgment, tactical decisions and trial strategy, strongly presuming that he has exercised reasonable professional judgment.
 
 State v. Grant,
 
 41,745 (La.App. 2d Cir.4/4/07), 954 So.2d 823,
 
 writ denied,
 
 07-1193 (La.12/7/07), 969 So.2d 629;
 
 State v. Moore,
 
 575 So.2d 928 (La.App. 2d Cir. 1991).
 
 See also State v. Tilmon,
 
 _|_17 738,003 (La.App. 2d Cir.4/14/04), 870 So.2d 607,
 
 unit denied,
 
 04-2011 (La.12/17/04), 888 So.2d 866.
 

 
 *718
 
 Second, the defendant must show that counsel’s deficient performance prejudiced his defense.
 
 Strickland v. Washington, supra.
 
 This requires a showing that counsel’s errors were so serious that the defendant was deprived of a fair trial,
 
 ie.,
 
 a trial whose result is reliable.
 
 Id.
 
 The defendant must prove actual prejudice before relief will be granted.
 
 Id.
 
 It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings.
 
 Id.
 
 Defendant must be able to show that, but
 
 for
 
 counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.
 
 Strickland v. Washington, supra; State v. Pratt,
 
 26,862 (La.App. 2d Cir.4/5/95), 658 So.2d 174,
 
 ivrit denied,
 
 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; thus, general statements and conclusory charges will not suffice.
 
 Strickland v. Washington, supra; State v. Jordan,
 
 35,643 (La.App. 2d Cir.4/3/02), 813 So.2d 1123,
 
 writ denied,
 
 02-1570 (La.5/30/03), 845 So.2d 1067.
 

 In the case
 
 sub judice,
 
 as previously discussed, defense counsel failed to make a contemporaneous objection when the State referenced Defendant’s post-arrest silence. Defendant asserts that, had defense counsel contemporaneously objected to the testimony referencing Defendant’s post-arrest silence, the outcome of the proceedings would have been different because Defendant would have been entitled to a mistrial. Assuming, 1
 
 lsorguendo,
 
 that Defendant is correct that defense counsel’s failure to make the contemporaneous objection rises to the level of deficient performance, we do not agree that, but for defense counsel’s error, the outcome of the proceedings would have been different.
 

 Defendant must show that, but for trial counsel’s failure to object to the admission of testimony regarding his post-arrest silence, there is a reasonable probability that he would not have been found guilty of attempted second degree murder. As noted previously, the brief testimony referencing Defendant’s post-arrest silence was limited to the State’s acknowledgment of Defendant’s constitutional right to remain silent. When viewed in the context of the substantial weight of the evidence against Defendant, noted in our discussion of Assignment of Error One, there is not a reasonable probability that the jury would have returned a different verdict had defense counsel contemporaneously objected to the State’s reference of Defendant’s post-arrest silence.
 

 Furthermore, Defendant’s assertion that, had defense counsel objected, La. C. Cr. P. art. 770 would have mandated a mistrial, is incorrect for two reasons. First, Article 770 provides that: “[U]pon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury ... refers directly or indirectly to ... [t]he failure of the defendant to testify in his own defense[.]” The testimony at issue, however, referred to Defendant’s failure to give a statement to the police,
 
 not to his failure to testify in his own defense.
 
 Second, even if such testimony is construed to indirectly refer to the fact that Defendant did not testify at trial, |19a mistrial in that context would be a permissive ruling, not a mandatory ruling, because the statements were not made by the judge, district attorney or court official. La. C. Cr. P. art. 771.
 

 This assignment of error is without merit.
 

 Assignment of Error Number Four (verbatim):
 
 The trial court erred in permitting the state to introduce evidence
 
 *719
 
 of other bad acts purported committed by the Appellant.
 

 Defendant argues that evidence of his previous acts of violence toward the victim served only to cast him in a negative light in the eyes of the jury; and, therefore, the prejudicial nature of this evidence outweighed its probative value. The State counters that Defendant’s other acts against the victim were of a like nature and that evidence of such acts was offered to prove system, motive, intent, plan and knowledge.
 

 Evidence pertaining to Defendant’s commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible when the only purpose of such evidence is to prove Defendant’s character and, thus, his subsequent disposition to break the law. La. C.E. art. 404;
 
 State v. Harrison,
 
 604 So.2d 583 (La.1992);
 
 State v. Humphrey,
 
 412 So.2d 507 (La.1981);
 
 State v. James,
 
 569 So.2d 135 (La.App. 1st Cir.1990);
 
 State v. Cook,
 
 590 So.2d 720 (La.App. 3d Cir.1991);
 
 State v. Felix,
 
 556 So.2d 1317 (La.App. 3d Cir.1990);
 
 State v. Wright,
 
 94-682 (La.App. 5th Cir.1/18/95), 650 So.2d 291,
 
 unit denied,
 
 96-0855 (La.9/20/96), 679 So.2d 430. The underlying rationale behind this rule is that the prejudicial tendency of such evidence outweighs its probative value, since the finder of fact is likely to convict because Defendant is a “bad person” |anregardless of the strength of evidence against him in the case being tried.
 
 State v. Brown,
 
 318 So.2d 24 (La. 1975);
 
 State v. Gay,
 
 616 So.2d 1290 (La. App. 2d Cir.1993),
 
 unit denied,
 
 624 So.2d 1223 (La.1993);
 
 State v. Felix, supra.
 

 La. C.E. art. 404 lists the exceptions to this rule and provides in pertinent part:
 

 * * *
 

 [E]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
 

 Additionally, in order to be admissible under an exception listed in Article 404(B), the evidence must have some independent relevance or be an element of the crime charged and, further, must be a genuinely contested issue at trial.
 
 State v. Welch,
 
 615 So.2d 300 (La.1993);
 
 State v. Jackson,
 
 625 So.2d 146 (La.1993). The State is also required to make a showing of fact which would support a jury finding that Defendant committed the prior act by a preponderance of the evidence. La. C.E. art. 1104;
 
 Huddleston v. United States,
 
 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988);
 
 State v. Langley,
 
 95-2029 (La.App. 4th Cir.9/4/96), 680 So.2d 717,
 
 unit denied,
 
 96-2357 (La.2/7/97), 688 So.2d 498;
 
 State v. Crawford,
 
 95-1352 (La.App. 3d Cir.4/3/96), 672 So.2d 197,
 
 writ denied,
 
 96-1126 (La.l0/4/96)¿]21679 So.2d 1379. Even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, misleading the jury or by considerations of undue delay or waste of time. La. C.E. art. 403. Finally, the requirements set forth in
 
 State v. Prieur,
 
 277 So.2d 126 (La.1973), must be met before the evidence is properly admissible.
 

 
 *720
 
 According to
 
 Prieur,
 
 in order to comply with due process requirements, the State is required to give pretrial notice of its intent to use evidence of other crimes.
 
 State v. Prieur, supra. Prieur
 
 also requires the State to show that, prior to admission of the evidence, the evidence is not repetitive or cumulative, it selves the purpose for which it is offered and is not being offered as a pretext for portraying the defendant as a person of bad character. Further,
 
 Prieur
 
 requires that, at the defendant’s request, the jury be instructed that the evidence was received for the limited purpose of proving an issue for which evidence of other crimes may be admitted, such as intent, and that the defendant cannot be convicted of any charge other than the one named in the indictment or one that is responsive to that charge.
 

 The erroneous admission of evidence of other crimes is subject to the harmless error analysis.
 
 State v. Maise,
 
 00-1158 (La.1/15/02), 805 So.2d 1141. The test for determining harmless error is whether the reviewing court may conclude that the error was harmless beyond a reasonable doubt,
 
 State v. Casey,
 
 99-0023 (La.1/26/00), 775 So.2d 1022,
 
 cert denied,
 
 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000), or “whether the guilty verdict actually rendered in
 
 this
 
 trial was surely unattributable to the error.”
 
 _|_22 Sullivan v. Louisiana, supra.
 
 The remedy for erroneous admission of evidence, where there is reasonable doubt that such evidence was not harmless, is reversal of the defendant’s conviction.
 
 State v. Foret,
 
 628 So.2d 1116 (La.1993). A trial court’s decision regarding admissibility of the evidence should not be overturned absent a clear abuse of discretion.
 
 State v. Mosby,
 
 595 So.2d 1135 (La.1992).
 

 This court has held that prior instances of domestic violence are admissible under La. C.E. art. 404 in order to show that the charged crime was an action in conformity with a pattern of behavior between the victim and the defendant.
 
 State v. Welch, supra; State v. Davenport,
 
 33,961 (La. App. 2d Cir.11/1/00), 771 So.2d 837,
 
 writ denied,
 
 00-3294 (La.10/26/01), 799 So.2d 1150. In
 
 State v. Welch, supra,
 
 the court held that evidence of a defendant’s prior threats and acts of violence against the victim were relevant and admissible in order to “place the circumstances of the offense in their proper eontext[.]” The
 
 Welch
 
 court explained that the evidence was admissible because “[t]he primary purpose of the evidence was not to prove [the defendant’s] bad character but to illustrate the volatile nature of his relationship with the victim ... To that extent, the probative value of the evidence outweighed any prejudicial effeet[.]”
 
 State v. Welch, supra.
 

 In the case
 
 sub judice,
 
 the State provided the court and Defendant with the requisite notice of its intent to use evidence of Defendant’s prior acts.
 
 State v. Prieur, supra.
 
 The parties stipulated to the State’s possession of clear and convincing evidence of the prior acts, thus agreeing that the State Lahad met its burden of proof pursuant to La. C.E. art. 1104.
 
 [3]
 
 Defendant’s threats and prior acts of violence against the victim were a reflection of the volatility of their relationship and, thus,
 
 *721
 
 provided a context for the offense.
 
 State v. Welch, supra.
 
 The probative value of the evidence showing the similarity of this pattern of conduct by Defendant toward the victim substantially outweighed any potentially prejudicial effect on Defendant. The evidence was, therefore, admissible.
 

 This assignment is without merit.
 

 CONCLUSION
 

 For the foregoing reasons, the conviction and sentence of Defendant, Jesse Wade Langston, are affirmed.
 

 AFFIRMED.
 

 [1]
 

 . Jay Dyess, a salesperson at Elkins Kia in Bossier City, sold one vehicle to the victim and a separate vehicle to Defendant. Mr. Dyess testified that, just prior to Christmas 2.006, Defendant called and demanded a key to the victim’s car. Mr. Dyess explained to Defendant that he could not make a key for the victim's car and give it to Defendant because the car was not registered in Defendant’s name. Mr. Dyess told Defendant that the victim would be required to come to the dealership and request one herself. Defendant called several more times demanding a key to the victim’s vehicle; and, because Mr. Dyess continued to refuse, Defendant eventually became irate and began cursing at Mr. Dyess.
 

 [2]
 

 . After Defendant had been arrested and pri- or to trial, he mailed letters to the victim and called her residence in violation of a protective order. In his letters to the victim, Defendant accused her of being involved with insurance fraud and threatened to make sure that she went to jail if she did not visit him while he was incarcerated.
 

 [3]
 

 . The record does not reflect that the defense requested that the jury be given a limiting instruction, but the following instruction was given to the jury: “[Y]ou may not find [the defendant] guilty of this offense merely because he may have committed another offense or offenses at some time in the past.”