Judgment rendered December 18, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,041-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

LAQUINCY WARREN                          Appellant

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Webster, Louisiana
Trial Court No. 96,818

Honorable Charles A. Smith, Judge

* * * * *

LOUISIANA APPELLATE PROJECT                 Counsel for Appellant
By: Edward K. Bauman

J. SCHUYLER MARVIN                          Counsel for Appellee
District Attorney

HUGO A. HOLLAND, JR.
RICHARD R. RAY
JIMMY WAYNE "JIMBO" YOCUM, JR.
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and ROBINSON, JJ.

**PITMAN, C. J.**

Defendant Laquincy Warren appeals his conviction for possession of a firearm or carrying a concealed weapon by a convicted felon, a violation of La. R.S. 14:95.1, for which he was sentenced to 15 years at hard labor, without benefit of probation, parole or suspension of sentence, and a fine of $1,000. For the following reasons, we affirm in part, reverse in part and remand.

## FACTS

Defendant was charged by bill of information with possession of a firearm or carrying a concealed weapon by a convicted felon, a violation of La. R.S. 14:95.1, in that on or about July 23, 2021, in Webster Parish, a Stallard Arms, Inc. JS-9mm was found in his possession after he had been previously convicted of felony possession of marijuana, a Schedule I Controlled Dangerous Substance, on September 14, 2009.

A jury trial was held in July 2023. Prior to the beginning of trial, the trial court held a hearing pursuant to La. C.E. art. 404(B) regarding Defendant's conviction in 2015 of possession of a firearm, which the prosecution intended to use at trial as proof of Defendant's specific intent in the case at bar. In the earlier incident, Defendant was chased by the police while he had two guns in his possession. He threw one gun down and pointed the other at the police but then surrendered with that gun clearly in his possession. Defendant had bullets in his pocket in that incident. Defendant's attorney objected to the use of the 2015 incident as it was the same charge as that of the instant case, and the information was too prejudicial for the jury to hear. The trial court admitted the evidence and stated on the record that the prosecution intended to prove motive, intent,

plan and knowledge. Defendant's attorney's objection was noted for the record, and the trial commenced the next day after the jury was seated.

Detective Ryan Barnette was a member of the Minden Police Department in 2015 as a patrol supervisor. He testified regarding the prior incident that was the subject of the La. C.E. art. 404(B) hearing[1] and stated that in August 2015, he responded to a call about a suspicious person near the St. Rest Baptist Church. He saw a person fitting the description he had been given, a black male wearing all black clothing, who proved to be Defendant. Defendant fled on foot, and he pursued. Defendant turned around to face him and pulled a handgun from his waistband, aimed it at him but did not fire the weapon. He drew his weapon, but it was unsafe to take a shot at Defendant because his backup, Ofc. Chris Hammontree (currently Lieutenant), was approaching from the other side. Defendant dropped his weapon but then fled again. He stated that Defendant was eventually apprehended and taken into custody. Live ammunition and synthetic marijuana were found on Defendant's person. He further testified that Defendant had been in possession of two firearms that day—one that Defendant had pointed at him, and the other that Defendant dropped while running between two houses.

Sergeant Mitchell Hackett of the Minden Police Department testified that he responded to a call on July 23, 2021, about a man in the street with a gun. He was given a description of the person and his clothing. When he arrived at the scene, Lt. Hammontree and his K-9 Tigo were getting out of their unit. He saw Defendant running up a hill and gave chase on foot.

_____

[1] This crime was not the predicate crime to the instant charge of possession of a firearm by a convicted felon.

2

Lt. Hammontree and Tigo went in another direction. He stated that he lost sight of Defendant as he went around a building. Once he rounded the building, he saw that Ofc. Brandon Curry, who had also approached from a different direction, had Defendant at gunpoint on the ground. When he was about 20 to 30 feet away from them, he noticed a gun on the ground on the path the Defendant had followed. There was a fence between Ofc. Curry and Defendant, so he left the gun where it was while he navigated the fence and helped place Defendant in handcuffs. He testified that he searched Defendant's pockets and found some live 9mm ammunition and a methamphetamine pipe. Ofc. Curry recovered the 9mm firearm and gave it to him. He testified that he test fired the gun and that it was operational. It was introduced in evidence, as were the bullets he had found in Defendant's pocket. He stated that he had seen the handgun about 10 or 15 feet from a metal building, that no other person had been running in that same direction and that only Defendant and Lt. Hammontree were in the fenced area.

Ofc. Curry of the Minden Police Department testified that he was on duty the day of the incident and identified Defendant. He stated that he responded to a call about a male subject pointing a firearm at someone on Abney Street. When he arrived, he saw Lt. Hammontree and Sgt. Hackett, who indicated Defendant's location, so he drove to the other side of the field. Once there, he saw Defendant running toward him by a building in the field that was surrounded by a six-foot fence. He testified that he drew his weapon and ordered Defendant to come to him, to lie on the ground and to throw down a backpack he was holding in his right hand. He stated that Defendant obeyed the order and threw the backpack on the ground, but the fence was between them, so he simply held his gun on Defendant until

3

Ofc. Hackett and Lt. Hammontree arrived seconds later. Ofc. Hackett took Defendant into custody.

Ofc. Curry stated he did not have his body camera on because he was off duty and his vest was in the back of his police car. However, once Ofc. Hackett arrived and was able to take Defendant into custody, he returned to his car, put on his vest and activated the camera. He testified that Lt. Hammontree told him that Defendant had last been seen with a white bag and a firearm. He retrieved the white bag and a black semi-automatic firearm adjacent to that location. He cleared the firearm and turned it over to Ofc. Hackett. A video was played which showed the firearm on the ground near the white bag.

Ofc. Curry further testified that this was not the first time he had come into contact with Defendant and that his first encounter was in 2015, which was a "pretty much similar situation." He stated that Ofc. Hackett conducted a search and found 9mm ammunition in Defendant's pants. He also identified the gun as a Stallard 9mm semi-automatic firearm.

James Griffin of Louisiana State Probation and Parole reviewed Defendant's file and stated that he had a 2009 felony possession of marijuana offense to which he pled guilty on September 14, 2009. Defendant was sentenced to three years at hard labor, suspended, with three years' probation. Defendant's suspended sentence was revoked on March 1, 2010, and he had to serve the original sentence of three years, which was served until March 2013. He stated that he was currently Defendant's parole officer for the 2015 charge. He identified Defendant and verified that he was the same person who committed the crimes in 2009 and 2015. He affirmed that the completion date of sentence in March 2013 occurred within

4

ten years of July 23, 2021.  He further stated that his supervision of Defendant began in 2021 for possession of a firearm by a convicted felon.

Lt. Christopher Hammontree of the Minden Police Department testified that he responded to a call that two males were fighting in the street and that one had pulled a gun.  The person pulling the gun was described as a black male with a black top and blue jeans who had a backpack and a gun.  He saw Defendant standing in the street, and when he made eye contact with him, Defendant tried to shove the gun into the backpack.[2]  He ordered Defendant to stop, but Defendant ran away.  He testified that he was delayed in apprehending Defendant by having to recall his K-9 Tigo but that he observed Defendant run away with the backpack on his back and a white bag in his left hand.  Defendant was actively shoving a gun in the white bag but was having trouble because he was running.  Defendant ran behind the house, up a driveway and eventually into a field where he rounded a corner behind a metal shop.  He further stated that they were only seconds behind Defendant and that as they rounded the corner, he saw the white bag and the gun that Defendant had been trying to shove into the backpack.  The video from his body camera was shown.

The jury returned a unanimous decision of guilty as charged.  A presentence investigation ("PSI") report was ordered, and sentencing was set for October 23, 2021.  The trial court considered the PSI report and Defendant's criminal history, specifically noting the prior felony conviction of possession of marijuana in 2009, which suspended sentence was revoked

---

[2] The witness later testified that Defendant was trying to put the gun in the white bag he was carrying and that the backpack was on Defendant's back.  While this is a discrepancy in the witness's testimony, it validates that Defendant had a white bag and a backpack and that he was attempting to put the gun into the white bag.

and for which he had to serve his full sentence. It also noted the 2015 conviction for possession of a firearm by a convicted felon for which he received a 15-year sentence and for which he was on parole at the time of the instant offense. It considered Defendant's upbringing and home life; his education; his lack of consistent work history, except when he was incarcerated; and that he had no gang affiliation or military experience. It noted that this was Defendant's fourth felony offense, stating that commitment to an institution was necessary and that a lesser sentence would deprecate the seriousness of the offense. Defendant was sentenced to 15 years at hard labor, without benefit of probation, parole or suspension of sentence. He was also fined $1,000 in accordance with La. R.S. 14:95.1.

Defendant appeals his conviction.

**DISCUSSION**

*Sufficiency of the Evidence*

Defendant argues the evidence was insufficient to convict him beyond a reasonable doubt of possession of a firearm by a convicted felon. He contends that parts of the officers' testimonies differ from each other and that no rational trier of fact could find that he had actual or constructive possession of the weapon recovered that day.

The state contends that it met its burden of proving all elements of the crime of Defendant, a felon, being in possession of a firearm.

The standard of appellate review for a sufficiency of the evidence claim is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731

6

(La. 1992); *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13), 116 So. 3d 884. *See also* La. C. Cr. P. art. 821. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

At the time of the offense, La. R.S. 14:95.1 stated in pertinent part as follows:

> A. It is unlawful for any person who has been convicted of. . . possession of a firearm while in the possession of or during the sale or distribution of a controlled dangerous substance, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, . . . to possess a firearm or carry a concealed weapon.
>
> B. Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars.

To convict a defendant of possession of a firearm by a convicted felon, the state must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. *State v. Carr*, 55,692 (La. App. 2 Cir. 5/22/24), 387 So. 3d 886. The state can prove possession of a firearm by a convicted felon by either actual or constructive possession. *Id.* Actual possession means having an object in one's possession or on one's person in such a way as to have direct physical contact with and control of the object. *Id.* Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion

7

and control. *Id.* A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. *Id.* Constructive possession entails an element of awareness or knowledge that the firearm is there and the general intent to possess it. *Id.*

After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Lt. Hammontree testified that while he was in pursuit, he saw Defendant had a white bag in his left hand, a gun in his right hand, and he was struggling to shove the gun into the white bag as he fled. He also testified that the same white bag he observed in Defendant's hand was found in close proximity to the gun. He stated that there was no one else in the field where Defendant was pursued and caught. Sgt. Hackett retrieved the white bag and gun on the path Defendant had traversed. Constructive possession was proven beyond a reasonable doubt, as were all other elements of the crime.

For these reasons, this assignment of error is without merit.

*Admission of La. C.E. art. 404(B) Evidence*

Defendant argues that the trial court erred in allowing evidence of the 2015 arrest and conviction for this same offense, even though it was not used as the predicate crime, because its admission was prejudicial and was used to show the jury his character; thus, it was an abuse of discretion and the evidence should not have been admitted under La. C.E. art. 404(B).

The state argues that the purpose of introducing this particular evidence was not to show Defendant's bad character but, instead, to show motive and intent because the factual situations are almost identical. The

probative value was not substantially outweighed by a danger of unfair prejudice, confusion of the issues or misleading the jury.

La. C.E. art. 404(B) states that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for those purposes, or when it relates to conduct that constitutes an integral part of the act that is the subject of the present proceeding. *Id.*

Evidence pertaining to a defendant's commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible when the only purpose of such evidence is to prove his character and, thus, his subsequent disposition to break the law. La. C.E. art. 404; *State v. Langston*, 43,923 (La. App. 2 Cir. 2/25/09), 3 So. 3d 707, *writ denied*, 09-0696 (La. 12/11/09), 23 So. 3d 912. The underlying rationale behind this rule is that the prejudicial tendency of such evidence outweighs its probative value, since the finder of fact is likely to convict because the defendant is a "bad person" regardless of the strength of evidence against him in the case being tried. *Id.*

The erroneous admission of evidence of other crimes is subject to the harmless error analysis. *Langston*, *supra*. The test for determining harmless error is whether the reviewing court may conclude that the error was harmless beyond a reasonable doubt, *State v. Casey*, *supra*, or whether the

guilty verdict actually rendered in this trial was surely unattributable to the error. *Langston*, *supra.* Additionally, in order to be admissible under an exception listed in La. C.E. art. 404(B), the evidence must have some independent relevance or be an element of the crime charged and, further, must be a genuinely contested issue at trial. *Id.*

The trial court articulated its reasons for finding the La. C.E. art. 404(B) evidence relevant apart from merely showing Defendant's bad character. It found that the other crimes evidence was used to show motive, intent, plan and knowledge, and noted that the 2015 crime was extremely similar to the case at bar. For these reasons, the admission of the evidence was not in error. If any error existed, it would be considered harmless error.

For these reasons, this assignment of error is without merit.

### *Error Patent*

Defendant did not raise any errors in regard to his sentence. We find the sentence falls within the parameters of the statute, and it will be affirmed. However, there is an error patent regarding the trial court's imposition of the fine of $1,000. La. C. Cr. P. art. 875.1 became effective August 1, 2022, and although Defendant committed his offense before the article took effect, it is a procedural statute that applies to all actions subsequent to its effective date. La. C. Cr. P. art. 875.1(C)(1) provides that prior to ordering the imposition or enforcement of any financial obligations in sentencing, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. This hearing may be waived by either

10

Defendant or the trial court, but the record needs to reflect the waiver. La. C. Cr. P. art. 875.1(c)(2).

The trial court failed to hold the hearing on financial hardship when imposing the fine. Further, there is no evidence in the record that Defendant or the trial court waived the determination of financial hardship. Because the hearing was not held, we vacate Defendant's fine and remand for the required hearing. *See State v. Adams*, 55,696 (La. App. 2 Cir. 5/22/24), 387 So. 3d 914.

## CONCLUSION

For the foregoing reasons, we affirm the conviction of Defendant Laquincy Warren. His sentence is affirmed in part as to his 15-year imprisonment at hard labor without benefit of probation, parole or suspension of sentence, and is vacated in part as to the imposition of the $1,000 fine. We remand for a hearing pursuant to La. C. Cr. P. art. 875.1 to determine Defendant's ability to pay any assessed fines.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED IN PART AND VACATED IN PART; REMANDED WITH INSTRUCTIONS**.

11