BROWN, Chief Judge.
 

 hA grand jury indicted defendant, Michael Scott Crosby, with one count of aggravated rape and one count of aggravated kidnaping. A jury returned a responsive verdict of guilty of forcible rape and could not reach a verdict on the kidnaping charge. The court sentenced defendant to 40 years imprisonment at hard labor on the forcible rape conviction. Defendant now appeals. For the reasons set forth below, defendant’s conviction and sentence are affirmed.
 

 Facts
 

 The Victim in this case was defendant’s estranged wife. Defendant and the victim were married in January 2000. They had one child together, a daughter, born in September 2004. In August 2006, the victim initiated divorce proceedings against defendant and moved with the child into an apartment in Bossier City; defendant lived in an apartment in Shreveport.
 

 On Wednesday, September 20, 2006, the victim took the child to defendant’s apartment to leave her to visit that day with defendant. The victim and her daughter arrived at about 8:45 a.m. that morning. The victim went into the apartment to use the restroom and then began to discuss exchanging some property. Suddenly, defendant attacked the victim, cutting her hands with a box cutter, hitting her in the head with his fist, taping her wrists together with duct tape, and raping her. This all occurred while the two-year-old daughter played with markers on the floor.
 

 At the conclusion of the assault, defendant allowed the victim to get up and go to the bathroom. She told defendant to call 911, and he did so. Defendant kissed his daughter goodbye and went outside to wait for police.
 

 laThe first officer on the scene was Corporal Antoine Lane with the Shreveport Police Department. Corporal Lane saw defendant standing in the parking lot and spoke to him; defendant put his hands up and said, “Look, I’m the one you’re looking for ... I jumped on my wife or my soon to be ex-wife.” Defendant had bruises on his arm and complained that his hand or fist was hurting. Corporal Lane then arrested defendant.
 

 Police later found the victim’s blood spattered on the floor and on the bed in
 
 *1283
 
 defendant’s apartment along with a box cutter blade, the victim’s clothing and a used condom. The wounds on the victim’s hands required stitches, and her face was bruised. Defendant had bruises on his knuckles, what appeared to be bite marks on his right forearm, and the victim’s blood was found on his shorts and socks. A DNA profile on the rape kit sample recovered from the victim could not exclude defendant as the source but did exclude 99.77% of the Caucasian population.
 

 Discussion
 

 Self-Representation
 

 Both appellate counsel and defendant’s pro se brief claim that defendant was denied his constitutional right to self-representation.
 

 The supreme court explained the right to self-representation and the review of related trial procedures in
 
 State v. Bridgewater,
 
 00-1529 (La.1/15/02), 823 So.2d 877, 894,
 
 cert. denied,
 
 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003):
 

 An accused has the right to chose between the right to counsel and the right to self-representation.
 
 State v. Strain,
 
 585 So.2d 540, 542 (La.1991). An accused, however, will be held to have forfeited the right to self-representation if he vacillates | ^between self-representation and representation by counsel.
 
 United States v. Bennett,
 
 539 F.2d 45, 51 (10th Cir.1976);
 
 United States v. Frazier-El,
 
 204 F.3d 553 (4th Cir.),
 
 cert. denied,
 
 531 U.S. 994, 121 S.Ct. 487, 148 L.Ed.2d 459 (2000). In light of the fundamental significance attached to the right to counsel, the jurisprudence has engrafted a requirement that the assertion of the right to self-representation must be clear and unequivocal. See 3 Wayne R. LaFave, Jerold H. Israel & Nancy J. King,
 
 Criminal Procedure
 
 § 11.3(a)(2nd ed.1999) (noting courts should “ ‘indulge in every reasonable presumption against waiver’ ”);
 
 Faretta v. California,
 
 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975);
 
 State v. Hegwood,
 
 345 So.2d 1179, 1181-82 (La.1977). Requests which vacillate between self-representation and representation by counsel are equivocable.
 
 Bennett, supra.
 

 Whether the defendant has knowingly, intelligently, and unequivocably asserted the right to self-representation must be determined based on the facts and circumstances of each case. See
 
 State v. Strain,
 
 585 So.2d 540, 542 (La.1991) (citing
 
 Johnson v. Zerbst,
 
 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).
 

 The court in
 
 Bridgewater
 
 quoted
 
 Frazier-El,
 
 204 F.3d at 560:
 

 A trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel. The circumstances surrounding Frazier-El’s purported waiver of his right to counsel and the assertion of his right to proceed without counsel in this case suggest more a manipulation of the system than an unequivocal desire to invoke his right of self-representation. Taking the record as a whole, we are satisfied that the district court was justified, when confronted with Frazier-El’s vacillation between his request for substitute counsel and his request for self-representation, in insisting that Frazier-E1 proceed with appointed counsel.
 

 State v. Bridgewater,
 
 823 So.2d at 895.
 

 Defendant was charged with aggravated rape and aggravated kidnaping. The court appointed the Indigent Defender’s Office as defendant’s counsel. Defendant persisted in expressing his dissatisfaction with his appointed attorneys from the Indigent Defender Office, and on ^September 10, 2007, the court (Judge
 
 *1284
 
 Scott Crichton) held a hearing at which defendant requested either a new attorney or to be allowed to represent himself. At that time, defendant was represented by David McClatchey from the ID office, and defendant asserted that neither McClat-chey nor his predecessor would obtain items that defendant wanted to present as evidence. Defendant first said that he wanted to represent himself and would try to obtain legal help through “legal aid,” but when the trial court informed the defendant that only the ID office provided criminal defense for indigents, Defendant said, “[T]hen I guess I’ll have to handle my case pro se.”
 

 The judge then gave a stern warning to defendant that the decision to represent himself was particularly “ill-advised” because defendant faced a life sentence. Defendant responded by saying:
 

 I do not feel like I’m smart enough or that I know enough about the law, but it’s better than having someone that will not represent me properly.
 

 The court then allowed defendant to represent himself but appointed McClat-chey as standby counsel to assist him. The court directed McClatchey to give defendant his entire discovery file.
 

 On the state’s motion, a sanity commission was appointed. Defendant was examined by two psychiatrists, both of whom gave the opinion that defendant was competent to stand trial. One of the doctors opined that defendant had a paranoid personality, and that defendant understood that it would not be in his best interest to continue as his own attorney, provided that the court could appoint an attorney that defendant trusted. The other |sdoctor opined that defendant was capable of knowingly and voluntarily making the decision to represent himself.
 

 On December 17, 2007, Judge Crichton held a sanity hearing. Defendant told the court:
 

 I would like to remind you and the State that I have never said that I wanted to take myself as counsel through the trial. I said I wanted to take over away from McClatchey who is helping the State, he has not subpoenaed evidence — gathered the evidence that I needed. He is working against me. He does nothing which I ask him to do. He’s acted maliciously towards me and I said that I would try to find another lawyer. At no point did I say that I wanted to take myself through to the trial.
 

 After a brief recess, defendant asked for an attorney from outside of the ID office, and the court informed defendant that he could choose whether or not to be represented but could not choose which attorney represented him. Defendant continued to argue with the court that he wanted an attorney from outside the ID office. The court then engaged defendant in this dialogue:
 

 Court: I want to be very clear about this. It is my viewpoint based on at least several court appearances that Mr. Crosby is trying to set the stage for some issue of this type to be raised during post conviction relief. I note that he was previously represented by Alan Golden of the Caddo Parish Public Defender’s Office in another section before that section recused itself. And my understanding is that there were the same issues brought forward. It’s my viewpoint that Mr. Crosby can either represent himself or — and be the spokesman for himself or the Caddo Parish Public Defender’s Office can and will represent him and
 
 *1285
 
 be the spokesman for Mr. Crosby.
 

 Now, your choice Mr. Crosby is that the Caddo Parish Public Defender’s Office represents you, that right?
 

 | fiDefendant: That’s up to you. Like I said, if they will meet my criteria I will be happy to have them represent me. Pm just letting you know that if they do not meet my criteria I will come back before this court and ask to have them removed as my attorney. And to put it on a point, yes, sir, that’s fine. The Public Defender’s Office, I will be happy to take whoever they appoint.
 

 Court: All right. The court reiterates that the Caddo Parish Public Defender’s Office is appointed to represent Michael Scott Crosby. And from this point forward a lawyer from that office will be your spokesman.
 

 We note that the court did not rule that day on the sanity question.
 

 The case was called for trial as previously scheduled on February 11, 2008, before Judge Jeanette Garrett. Judge Garrett commenced by reciting the procedural history of the sanity issue and noted that at the sanity hearing the court was interrupted by defendant at this hearing with defendant’s concerns about self-representation. As the court finished this recitation, defendant said, “You’re lying.” The court instructed defendant to be quiet, to which defendant replied, “You’re still lying.” The court continued and, noting that both doctors found defendant competent to proceed, ruled that defendant was competent to stand trial.
 

 As the court attempted to continue, the judge was interrupted by outbursts from defendant stating that he did not accept McClatchey and that he fired him twice. Defendant then stated to the judge:
 

 You’re withholding this material. You’re keeping me from getting a fair trial. You will be going to jail, lady, so don’t even worry about it. Mr. McClat-chey will not be representing me.
 

 17Court reconvened later that afternoon with defendant present in court. As the judge began to address defendant, he resumed his interruptions. Pursuant to the judge’s instructions, the bailiff removed defendant from the courtroom, and the prosecutor noted for the record that at a bench conference prior to trial, the judge had admonished both sides to warn defendant that he would be removed from the courtroom if he continued with his disruptive conduct. Defendant was then returned to court, and the court instructed him that, among other things, he was not to speak unless he testified as a witness. The court noted for the record that it had been informed that, after defendant was , removed, he “just laughed about what [he] had just done in the courtroom.”
 

 The court then observed:
 

 And what I perceive going on here is Judge Crichton had this case for a long time. And now I have the case. And I had a transcript prepared of what occurred in court on December 17, 2007. And I want a copy of this transcript put into the record so that any reviewing court can clearly see what happened in court on December 17, 2007.
 

 On that date, Judge Crichton ruled that the Caddo Parish Indigent Defender’s Office is going to be representing you in this trial. That ruling is final. And we’re not going to revisit that ruling. I also note that Judge Crichton noted for the record that he had lots of court appearances with you. And this kept going on where you would interrupt in court and that you wanted to represent yourself, but then you don’t and all of this. He noted that — this is Judge
 
 *1286
 
 Crichton’s own words: “It is my viewpoint, based on at least several court appearances, that Mr. Crosby is trying to set the stage for some issue of this type to be raised during post-conviction relief.”
 

 In the instant case, both of the district judges who considered this issue concluded that defendant’s vacillation concerning self-representation |swas merely an effort to manipulate the legal system and to foment a reversible error in the proceedings. Defendant affirmed in December 2007 that he would be happy to have the ID office represent him “if they will meet my criteria.” However, on the first day of the trial, defendant insisted upon his right to represent himself and disrupted the proceedings with allegations that, among other things, he had not received all of the relevant material in discovery. The record amply supports the conclusion that defendant’s insistence on self-representation, made on the morning of trial, was merely an effort to create an error in the trial proceedings which defendant might later raise in a higher court. Defendant’s request to represent himself was equivocal, not genuine or sincere, and untimely.
 
 See State v. Santos,
 
 99-1897 (La.09/15/00), 770 So.2d 319.
 

 Removal from Courtroom
 

 Both appellate and defendant pro se argue that his removal from the courtroom violated his right to confront the witnesses against him. Louisiana Code of Criminal Procedure art. 831 provides, that a defendant charged with a felony shall be present throughout the proceedings; however, La. C. Cr. P. art. 832 provides, in part:
 

 A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and:
 

 [[Image here]]
 

 (2) After being warned by the court that disruptive conduct will cause him to be removed from the courtroom, he persists in conduct which justifies his exclusion from the courtroom.
 

 |nIn
 
 Illinois v. Allen,
 
 397 U.S. 337, 343-344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970), the U.S. Supreme Court explained:
 

 It is essential to the proper administration of criminal justice that dignity, order, and decorum be the hallmarks of all court proceedings in our country. The flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated. We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant ... :(1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.
 

 At the beginning of trial each day, the trial judge made every possible effort to allow defendant to exercise his right to be present in the courtroom, but defendant insisted on deliberately interrupting the proceedings any time he was able to do so. Indeed, at one point, outside the presence of the jury, defendant managed to forcibly remove a gag placed simply to allow the trial judge to speak with defendant. In lieu of defendant’s physical presence in the courtroom, the judge made sure that defendant was able to hear the proceedings
 
 *1287
 
 during the time that he spent in an anteroom with one of his two attorneys at his side.
 

 Like his transparent efforts to disrupt the proceedings on the first day of trial, defendant deliberately engaged in misbehavior during the trial in order to, as the trial judge put it, “avoid the inevitable day of reckoning for what happened in this case.” The trial judge made repeated, although futile, efforts to have defendant present in the courtroom at the critical stages of trial, but defendant’s conduct demanded that the trial judge take action to 110ensure that the trial court continue in an orderly fashion. On one occasion defendant yelled, “F-you. F-you.” at his attorney.
 

 Denial of Right to Testify
 

 Both appellate counsel and defendant pro se urged that the -trial court erred in stopping the proceedings and having him removed during his testimony; he asserts that this action deprived him of his right to testify.
 

 Outside the presence of the jury, defendant’s attorney discussed with the judge the possibility that defendant would testify and stated that he had been unable to discuss the issues with defendant because he had stopped talking to the attorney. The court had defendant brought into the courtroom, explained to him how his testimony, should he choose to testify, would be given. Defendant informed the court that he wanted to testify, affirmed that he would cooperate with the question and answer format and stated that he would behave himself. However, defendant refused to speak with either of his attorneys despite the court’s effort to give him that opportunity. The court ordered that defendant be shackled but directed that the seats in the courtroom be arranged so that the jury could not see that defendant was restrained. His attorney objected to the restraints, but the court advised that every effort would be made to hide the restraints from the jury. The court had defendant sworn outside the presence of the jury and had him placed in the witness stand before the jury came in; when asked if his seating arrangement was acceptable by the bailiff, defendant said, ‘Tm perfectly fine with that. And I’ll say that on the record.” The court noted that the jury was not able to see the shackles.
 

 | n The jury was brought in, and McClat-chey began to question defendant. He testified to his birth date, that he had no prior convictions or arrests, and that he had been married to the victim. His attorney asked defendant if he raped or kidnapped her, to which defendant responded, “no.” However, as soon as his attorney began to question him about the events of September 20, 2006, defendant stated:
 

 I’d like to say that you, the state, and the judge have conspired to conceal evidence to prove that I am innocent.... And the police planted evidence.... Rodney Roach did not make his report until 30 minutes after he left the scene.... And that he said that—
 

 The court then had the jury removed from the courtroom. The court then stated that, defendant’s conduct amounted to a waiver of his right to testify. Defense counsel objected to that ruling and moved for a mistrial, which was denied. Defense counsel objected to the court’s ruling. The defense rested at that point.
 

 An accused’s right to testify is a fundamental right of constitutional dimension and is protected by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and by La. Const. art. I, § 16.
 
 State v. Shaw,
 
 06-2467 (La.11/27/07), 969 So.2d 1233,
 
 citing Rock v. Arkansas,
 
 483 U.S. 44, 51-53, 107 S.Ct. 2704, 2710, 97 L.Ed.2d 37 (1987).
 

 
 *1288
 
 As stated, the right of presence in the courtroom can be waived by the defendant’s contumacious conduct; likewise, the privilege of testifying can also be waived by the defendant’s conduct. These privileges cannot be lost unless it is clearly necessary to assure the orderly conduct of the trial. Illinois
 
 v. Allen, supra. See, e.g., U.S. v. Ives, 504 F.2d 935,
 
 941-42 (9th Cir.1974),
 
 vacated on other
 
 grounds
 
 [1]
 
 , 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975),
 
 on remand,
 
 547 F.2d 1100 (9th Cir.1976).
 
 See also Douglas v. State,
 
 166 P.3d 61 (Alaska App.2007).
 

 In
 
 Illinois v. Allen, supra,
 
 Justice Brennan stated in his concurring opinion, “[T]o allow the disruptive activities of a defendant like respondent to prevent his trial is to allow him to profit from his own wrong. The Constitution would protect none of us if it prevented the courts from acting to preserve the very processes that the Constitution itself prescribes.” 397 U.S. at 350, 90 S.Ct. at 1064.
 

 The determination of what conduct constitutes disruption and what method of control should be adopted is largely within the discretion of the trial judge. The trial judge must decide whether the seriousness of the disruption is sufficient to constitute a waiver of the privileges. In addition, a defendant must be warned of the consequences of his actions before a court can determine that he has waived his privileges to be present and to testify.
 

 Because an appellate court reviews a cold record,
 
 Illinois v. Allen, supra,
 
 it is not in as good a position as the trial judge to determine the effect of a defendant’s disruptive conduct. Facial expressions, gestures and other nonverbal conduct are significant. Therefore, great deference must be given to the decision of the trial judge. Id.
 

 There is a delicate balance between allowing an accused to defend himself against a criminal charge and maintaining the necessary decorum in h3the courtroom. A trial judge must approach this decision with great circumspection and consider, among other things, the gravity of the disruptions, the likelihood of continued disruption and the possibility of violence if the defendant takes the stand. In considering the probability of continued disruption and violence, the judge must be mindful of the previous misconduct.
 
 Id.
 

 In this case, the record reflects that defendant was not deprived of his right to testify. In fact, he used the cover of disruptive behavior to again not testify or be cross-examined as to what happened in his apartment. Once he took the stand, he stated he had no prior convictions or arrests and he did not “rape” the victim. The next question posed to him asked what happened in his apartment on the date of the incident. Rather than answering the question, defendant began to disrupt the trial with a tirade. By doing so, defendant was able to deny to the jury that he committed these offenses and then to cause himself to be removed from the courtroom, effectively avoiding an explanation of what actually happened and denying the prosecutor the opportunity to cross-examine him.
 
 [2]
 

 Pro-Se Assignment of Eiror 1. Gross miscarriage of justice.
 

 In his brief, defendant raises a variety of alleged errors in the trial proceedings.
 
 *1289
 
 Some of these allegations refer to pre-trial matters, such as arraignment, preliminary examination, speedy trial or the amount of his bail. Other errors related to alleged mishandling of evidence and claimed that 114items of evidence were “planted” by the state to bolster its case. The record reveals no evidence of prejudicial mishandling of evidence by any party and does not indicate that defendant objected to such evidence at trial. Further, in this case there was no question of identity; defendant’s former wife identified him as the perpetrator of the offenses. No evidence contradicted the victim’s evidence that she was assaulted, battered, and raped.
 

 Defendant also alleges ineffective assistance of counsel. To the extent that review is possible from the appellate record, defendant’s allegations are unfounded; the record shows that defendant’s attorney was a zealous advocate for his client, and indeed the verdict in the case tends to support the conclusion that defendant’s attorney acted with skill in testing the state’s evidence.
 

 Conclusion
 

 For the above reasons, defendant’s conviction and sentence are affirmed.
 

 [1]
 

 . The U.S. Supreme Court vacated this case for further consideration of the defendant's competence to proceed.
 

 [2]
 

 . Frankly, it was the prosecutor who should have objected to the court’s action. After defendant's rant against the first responders, he should have been asked directly what happened.