MOORE, J.
|TThe defendant, Gary Lee Aulph, was convicted of failure to register as a sex offender, second offense, in violation of La. R.S. 15:542.2.1. He received a sentence of *612 20 years’ imprisonment at hard labor without benefit of parole, probation or suspension of sentence. This appealed followed. For the following reasons, we affirm the defendant’s conviction and sentence.
FACTS
On October 24, 2011, the defendant, Gary Lee Aulph, was charged by a second amended bill of information with failure to register as a sex offender, second offense, in violation of La. R.S. 15:542.2.1. According to the bill of information, Aulph failed to register and/or update his registration between April 16, 2009 and September 27, 2009. A jury trial commenced against him on April 16, 2012.
Renee Johnson, a deputy sheriff with the Ouachita Parish Sheriffs Office, testified that she has worked in the sex offender registration office since July of 2007. According to Johnson, Aulph was previously convicted in California for committing two different sex crimes involving minors. Following his release from prison, Aulph relocated to West Monroe, Louisiana, to live with his parents. In accordance with Louisiana’s sex offender registration statutes, Aulph first reported for registration with the Ouachita Parish Sheriffs Office on October 27, 1997. At that time, Louisiana registration laws, La. R.S. 15:540 et seq., required him only to register annually for a period of 10 years. As such, Aulph’s registration period was scheduled to end on October 27, 2007.
LAulph was subsequently arrested, however, for failure to register between August and November of 2005. On July 11, 2007, he was convicted of first offense failure to register as a sex offender and sentenced to a period of imprisonment. Johnson said that since Aulph had failed to complete the 10-year registration requirement, he was required to continue registering as a sex offender upon his release from prison. Thus, when the defendant was paroled in March of 2008, the new 2008 amendments to the registration statutes became applicable to him.
These 2008 amendments classified offenders in one of three tiers, which was determined by the seriousness of their offenses. Tier I offenders would be required to register annually for life; Tier II offenders would register bi-annually for life; and Tier III offenders must register quarterly for life. Regardless of them tier status, all offenders were required to notify the registration office of any change in their registered address. Also, until an offender is formally classified as a Tier, I, II, or III offender, he is treated as a Tier III offender.[1] See La. R.S. 15:544.
Thus, from the time he was paroled in 2008 until the time he received his official tier status on September 23, 2010, Aulph was treated as a Tier III offender and required to register quarterly. The state introduced into evidence a sex offender registration form signed by Aulph on March 31, 2008, in which he acknowledged that he was expected to register with the sheriffs office quarterly for life and keep the office informed of any change |sof address or other pertinent information. The state also introduced into evidence two letters that Johnson sent to Aulph reminding him of his upcoming quarterly registration dates.
According to Deputy Johnson, the defendant last registered on March 27, 2009, and his next quarterly registration should have taken place on June 27, 2009. However, on April 16, 2009, Johnson learned that Aulph was no longer living at his registered address and he never informed the registration office that he moved. She *613 testified that Aulph failed to report for registration on June 27, 2009, and September 27, 2009. Thus, he was in violation of the sex offender registration statutes for failing to notify the office of a change in his address, as well as failing to comply with his quarterly registration requirement.
Jeannie Zubigaray, the defendant’s mother, testified that she knew Aulph was a registered sex offender and that he was required to register quarterly with the Ouachita Parish Sheriffs Office. She said that an Officer Davis came by the house to meet with Aulph on April 16, 2009. She told Davis that she had not seen her son for a few weeks, but that he recently called and said he was not coming home because “he messed up.”
Lieutenant Robert Davis of the Ouachita Parish Sheriffs Office corroborated Zubi-garay’s testimony. He went to Aulph’s registered address on April 16, 2009. Aulph was not home. Davis asked Zubiga-ray if she knew where the defendant was, and Zubigaray told him that she had not seen Aulph in two weeks. She told Davis that Aulph would not be coming home because he was in trouble.
14Officer Michael C. LaCroix, a probation and parole officer for the State of Louisiana, testified that he served as Aulph’s probation officer during 2008. As a condition of his parole, Aulph was required to sign a sex offender contract acknowledging that he would register quarterly for life and notify the office of any change in his registered address. LaCroix said the defendant was initially compliant with his parole conditions. However, when he attempted to visit Aulph on April 16, 2009, and May 4, 2009, Aulph was not home. The defendant’s mother told La-Croix that the defendant had recently called and said he could not come home and that if he came home he knew he would go to prison for the rest of his life.
Lieutenant Rick Fisher of the Ouachita Parish Sheriffs Office testified as a court-qualified expert in fingerprint analysis. He confirmed that Aulph’s fingerprints matched those taken by authorities in 2010 when Aulph was arrested for the instant offense. At the conclusion of Fisher’s testimony, the state rested.
The defendant called no witnesses nor offered any evidence.
The jury returned a verdict of guilty of second offense failure to register and/or update registration as a sex offender. The trial court ordered a presentence investigation (“PSI”) prior to the defendant’s sentencing.
During the sentencing hearing held on June 19, 2012, the state presented evidence of Aulph’s prior sex crimes. Monica Hicks, mother of one of the victims, testified that the defendant molested her seven-year-old daughter, N.W., in 2002. N.W. also testified to this incident, which occurred when Monica and her boyfriend, along with N.W., spent the night at a [ gfriend’s house. Aulph was also a guest in the home that night. N.W. awoke in the middle of the night to find that her underwear and shorts had been removed. Aulph was sitting next to N.W.’s bed and touching her vaginal and anal areas. N.W. told her family the next day, and Monica took N.W. to the hospital. Doctors determined that N.W. had been digitally penetrated in her vaginal and anal areas. Monica filed charges against Aulph, but she later learned that the charges had been dismissed.
Monica and N.W. testified regarding the severe effects of the molestation. N.W. has been in counseling for nearly 10 years. She became sexually active and involved with drugs at an early age. She attempt *614 ed suicide when she was 15 years old, and then again at age 16. N.W. spent time in psychiatric hospitals and told her counselors that she attempted suicide because she could not cope with the molestation. Doctors diagnosed her with post-traumatic stress disorder resulting from the molestation.
Monica testified that N.W.’s attitude changed when she learned that Aulph had been arrested and that she would be able to testify against him. N.W. received her G.E.D., and was currently making plans to attend college. At the conclusion of her testimony, Monica asked the court to punish Aulph because she feared her daughter might relapse if the defendant were not held accountable for his actions.
N.W. testified that during the molestation, Aulph threatened to spank her if she screamed or told anyone. She also said Aulph threatened her with a gun. She suffered from frequent flashbacks of the molestation. The flashbacks were so severe that she attempted suicide on two occasions. She | ficould not focus on her education and was forced to drop out of high school after missing too many of her classes.
Deputy Brian Newcomer of the Ouachita Parish Sheriffs Office testified that N.W., her mother, father, and aunt all gave consistent statements concerning the molestation.
Deputy Johnson testified regarding two sex crimes involving minors that Aulph committed in California. The first incident involved a 12-year-old girl. Aulph was friends with the victim’s parents and frequently stayed the night at their house. Similar to the incident involving N.W., the victim woke one night to find that her clothes had been removed and the defendant standing over her. Aulph pulled her onto the floor and raped her. Sometime after the rape, the victim’s stepfather discovered love letters that Aulph had sent to the victim. The stepfather confronted the girl, and she told him that Aulph raped her. Aulph was arrested and pled guilty to lewd and lascivious acts with a minor under the age of 14.
Aulph’s second California conviction was for committing unlawful sexual intercourse with a 15-year-old girl during the summer of 1989. According to the police report, the victim stated that Aulph did not force her to have sex. However, the girl admitted that she had been drinking and taking prescription medication on the night that she slept with Aulph.
Officer Michael LaCroix, the defendant’s parole officer, testified about a sexual battery crime that Aulph committed while on parole. On April 5, 2009, at which time he was required to comply with the sex offender registration statutes, Aulph stayed the night with Hattie King and her young 17teenage daughter. During the middle of the night, Aulph snuck into the girl’s bedroom and began rubbing her legs and breasts while she slept. King awoke and caught Aulph in the act, chased him out of her house, and called the police. Eleven days later, LaCroix learned that Aulph had not been back to his registered address for nearly two weeks. It was believed that Aulph fled Louisiana after this incident because he knew he would be arrested. Aulph was eventually arrested in Tennessee for failure to register as a sex offender with the Tennessee State Police Department. He pled guilty to attempted failure to register and was eventually brought back to Louisiana and charged with the instant offense.
The district court reviewed the PSI report and noted that Aulph had multiple drug, theft, DWI, and possession of marijuana arrests. He had been previously convicted for simple battery, aggravated *615 battery, aggravated assault, and contributing to the delinquency of a juvenile. He had inappropriate sexual contact with five known juveniles and caused serious harm to each of them. He failed to register as a sex offender on three separate occasions. He has been under supervision for over 20 years and had his probation or parole revoked five times. The district court believed Aulph had no remorse for his actions. Taking into consideration the appropriate sentencing factors in La. C. Cr. P. art. 894.1, the district court found Aulph to be the worst type of offender. As such, the court sentenced Aulph to 20 years’ imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
IsAulph filed a motion to reconsider sentence which was denied by the district court. He timely filed a motion for appeal.
DISCUSSION
By his first assignment of error, defendant alleges that the trial court erred by imposing an unconstitutionally harsh and excessive sentence. He claims his sentence of 20 years’ imprisonment served no purpose other than needless imposition of pain and suffering.
The state argues that the sentence was especially appropriate, noting that the district court provided detailed reasons as to why the maximum penalty was imposed.
La. R.S. 15:542.1.4 states, in pertinent part:
A. (1) A person who fails to register, periodically renew and update registration, provide proof of residence or notification of change of address or other registration information, or provide community notification as required by the provisions of this Chapter, and a person who knowingly provides false information to a law enforcement agency as provided in R.S. 15:542(0(8), shall, upon first conviction, be fined not more than one thousand dollars and imprisoned with hard labor for not less than two years nor more than ten years without benefit of parole, probation, or suspension of sentence.
(2) Upon second or subsequent convictions, the offender shall be fined three thousand dollars and imprisoned with hard labor for not less than five years nor more than twenty years without benefit of parole, probation, or suspension of sentence.
The trial court has wide discretion in imposing sentence within minimum and maximum limits allowed by the statute; therefore, a sentence will not be set aside as excessive unless the defendant shows the trial court abused its discretion. State v. Hardy, 39,233 (La.App. 2 Cir. 1/26/05), 892 So.2d 710; State v. Young, 46,575 (La.App. 2 Cir. 9/21/11), 73 So.3d 473, writ denied, 2011-2304 (La.3/9/12, 84 So.3d 550). The reviewing court does not determine whether another sentence would have been more appropriate, but whether the trial court abused its discretion. State v. Esque, 46,515 (La.App. 2 Cir. 9/21/11), 73 So.3d 1021, writ denied, 2011-2304 (La.3/9/12), 84 So.3d 550. An excessive sentence is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. State v. Gardner, 46,688 (La.App. 2 Cir. 11/2/11), 77 So.3d 1052.
A review of the sentencing guidelines does not require a listing of every aggravating or mitigating circumstance; the trial court must only articulate a factual basis for the sentence. State v. Cunningham, 46,664 (La.App. 2 Cir. 11/2/11), 77 So.3d 477. The defendant’s personal history and criminal record, as well as the *616 seriousness of the offense are some of the elements considered, but the trial court is not required to weigh any specific matters over other matters. State v. Moton, 46,607 (La.App. 2 Cir. 9/21/11), 73 So.3d 503, writ denied, 2011-2288 (La.3/30/12), 85 So.3d 113; State v. Caldwell, 46,645 (La.App. 2 Cir. 9/21/11), 74 So.3d 248, writ denied, 2011-2348 (La.4/27/12), 86 So.3d 625. All convictions and all prior criminal activity may be considered as well as other evidence normally excluded from the trial. State v. Platt, 43,708 (La.App. 2 Cir. 12/3/08), 998 So.2d 864, writ denied, 2009-0265 (La.11/6/09), 21 So.3d 305. Maximum sentences are generally reserved for the worst offenses and offenders. State v. Taylor, 41,898 (La.App. 2 Cir. 4/4/07), 954 So.2d 804.
| mUnder constitutional review, a sentence can be excessive, even when it falls within statutory guidelines, if the punishment is so grossly disproportionate to the severity of the crime that it shocks the sense of justice and serves no purpose other than to inflict pain and suffering. State v. Fatheree, 46,686 (La.App. 2 Cir. 11/2/11), 77 So.3d 1047.
In this instance, the district court sentenced Aulph to 20 years’ imprisonment, the maximum penalty permitted under La. R.S. 15:542.1.4. The district court adequately gave consideration to the circumstances of the offense, the information presented in the PSI, and the relevant factors set forth in La. C. Cr. P. art. 894.1. The district court noted that Aulph has an extensive criminal history, which includes multiple drug, theft, and aggravated crimes. He has been under supervision for the past 20 years, and has had his probation or parole revoked on numerous occasions. Aulph has had illicit sexual contact with at least five juvenile victims, all of whom he caused severe mental and emotional harm. He has shown neither remorse for his actions, nor a desire to seek help.
Considering Aulph’s extensive criminal history, a sentence of 20 years neither shocks the sense of justice, nor is it disproportionate to the severity of the offense. Therefore, this assignment of error is without merit.
The defendant filed a separate pro se brief and amended brief raising several assignments of error.
By his first assignment, Aulph alleges that the trial court erred by not enforcing a plea offer by the state that he asserts that he accepted. Aulph alleges that the state offered him a three-year sentence in exchange for a l^guilty plea. He states that on the day of trial, he accepted the plea offer, but the trial court now said that the offer was for five years. When defense counsel objected, the assistant district attorney stated that the original offer was made by a different prosecutor. Apparently, Aulph rejected the revised plea offer.
After review of the record and trial transcript, we find that the record before us does not support the defendant’s claim. Our review of the court minutes indicates that the defendant and counsel George Britton were advised of a plea offer in open court on July 20, 2011. The terms of the plea offer are not indicated. After two continuances, on October 24, 2011, the court minutes show that the defendant, with counsel present, declined the plea offer. Afterward, an amended bill of information was filed and the defendant waived formal arraignment and entered a plea of not guilty. Trial commenced on April 16, 2012. There is no mention of a plea offer again after the October 24, 2011, proceeding. Without any substantive evidence to support this claim, we conclude that this assignment is without merit.
*617 By his second pro se assignment, Aulph contends that the trial court erred by overruling objections by defense counsel that no arraignment was held. While there is no transcript of the proceedings in this record, the court minutes indicate that counsel for the appellant objected that there had been no arraignment on the second amended bill of information. The objection was overruled; the defendant then waived formal arraignment and entered a plea of not guilty. The original bill of information, the amended bill of information and the second amended bill of information are in the record. |12The amended bill of information charges defendant for failing to register or update his registration on or about April 16, 2009. The second amended bill of information charges the defendant for failing to register or update his registration on or about April 16, 2009, through September 27, 2009.
Rearraignment after amendment of the bill of information is not required where the substance of the charge has not been changed. The purpose of an arraignment is to notify a defendant of the charge against him. La. C. Cr. P. art. 551. Where amendment of the indictment or bill of information is designed to cure deficiencies in the charging instrument and not to alter the nature of the crime, a defendant is not entitled to be rearraigned on the amended indictment or bill of information. State v. Bluain, 315 So.2d 749 (La.1975). State v. Jones, 587 So.2d 787 (La.App. 3 Cir. 10/2/91).
The Third Circuit in State v. Rodriguez, 476 So.2d 503 (La.App. 1 Cir. 10/8/85), previously held that the failure to rearraign a defendant after a bill of information was amended to correct the time interval during which his crime was committed did not constitute error.
In this instance, counsel objected to the failure of an arraignment on the second amended bill of information, but then immediately waived formal arraignment and entered a plea of not guilty. La. C. Cr. P. art. 555 states that “[a] failure to arraign the defendant ... is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.”
1 isThe defendant in this instance has presented no argument showing that he was prejudiced by the amendment to the bill of information, nor by the court overruling the defendant’s objection. It appears that immediately thereafter, counsel waived formal arraignment and entered a plea of not guilty. We conclude, therefore, that defendant’s assignment is without merit.
In his third and fourth pro se assignments of error, defendant contends the trial court erred by overruling objections by the defense on evidence Exhibit S-2, and to Deputy Johnson’s testimony regarding the contents of the exhibit.
Exhibit S-2 consisted of a letter dated September 13, 2010 to Aulph from Lieutenant Stacy Barrett, Deputy Director, Louisiana State Police, Louisiana Bureau of Criminal Identification and Information, State Sex Offender and Child Predator Registry. The letter informs the defendant of the three-tier registration scheme, and that, based on Aulph’s out-of-state conviction for lewd and lascivious acts with a child under 14 years, and unlawful sexual intercourse with a minor under 18, he is required to register pursuant to Tier III, which requires lifetime quarterly registration and updating.
Our review indicates that defendant’s counsel objected to Deputy Johnson’s qualification to testify regarding Aulph’s tier classification, since he had not been formally classified until well after he commit *618 ted the instant offense. Counsel also raised an objection to the letter stating the determination that Aulph was a Tier III class offender was hearsay. Reviewing the hearsay exceptions, the court overruled the objection, finding 114that the contents of the letter were trustworthy and not hearsay.
Hearsay is an oral or written assertion other than one made by the declarant while testifying at trial offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801. Hearsay is inadmissible at trial unless it falls under one of the defined exceptions provided in the Code of Evidence. La. C.E. art. 802. La. C.E. art. 803(8) provides a public records and reports exception to the hearsay rule, including factual findings resulting from an investigation by a public agency made pursuant to authority granted by law.
In this instance, the defendant submitted no argument in support of his assignment. Any assignment of error that is not briefed may be considered abandoned. URCA 2-12.4. We find no error in the court’s ruling, however, and conclude this assignment is without merit.
Regarding Deputy Johnson’s testimony, we conclude that if there was trial error, it was harmless error. The harmless error inquiry is “whether the guilty verdict actually rendered in this trial was surely unattributable to the error.” Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Langston, 43,923 (La.App. 2 Cir. 2/25/09), 3 So.3d 707.
Johnson testified that even though Aulph was not formally classified until after he completed the instant offense, he was treated as a Tier III offender and required to register quarterly. In support of her testimony, the state introduced into evidence Aulph’s sex offender registration form which he completed when he was released on parole. By signing the form, Aulph acknowledged that he was required to register quarterly for life. Therefore, 11 seven without Johnson’s testimony, the state proved beyond a reasonable doubt that Aulph knew he was in violation of the sex offender registration statutes between April 16, 2009, and September 27, 2009. Thus, even if Johnson’s testimony was improper, her statement amounted to harmless error. This assignment is without merit.
In his sixth pro se assignment of error, defendant alleges that the trial court erred by overruling an objection by the defense to Ms. Jeannie Zubigaray’s testimony.
Again, the defendant has provided no legal argument in support of his assignment and may be deemed abandoned. URCA 2-12.4. Nevertheless, Aulph claims that the trial court erred by allowing Ms. Zubigaray’s-testimony concerning the telephone conversation on the grounds that it constituted hearsay and allowed the introduction of other crime’s evidence.
La. C.E. art. 404(B) states, in pertinent part:
(1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an inte *619 gral part of the act or transaction that is the subject of the present proceeding.
La. C.E. art. 804(8) provides:
A statement which was at the time of its making so far contrary to the declar-ant’s pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable |1fiman in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.
The supreme court has recognized an exception to the hearsay rule for statements made against a declarant’s own penal interest. State v. Gilmore, 332 So.2d 789 (La.1976). Third-party testimony concerning such statements is allowed when the declarant himself is unavailable to testify. State v. Hudson, 361 So.2d 858 (La.1978). In order for such statements to be admissible, however, there must be indications that the statements are truly reliable. State v. Rushing, 464 So.2d 268 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986). According to Rushing, supra, the assumption is that a person would not normally admit to the commission of a crime if it were not true. However, unless the statement is truly against the declarant’s penal interest, its reliability is suspect.
We conclude that the court did not err by overruling the defense counsel’s objection to Zubigaray’s testimony. Zubigaray testified that Aulph telephoned her and informed her that he had gotten into trouble and would not be coming home. Under Rushing, supra, such a statement would be against Aulph’s interest because it suggested that he had committed a crime for which he would be arrested if he were caught. Furthermore, the statement does not divulge any specific evidence tending to prove Aulph committed a particular crime. As such, the statement was admissible as it qualifies more as a statement against interest rather than an introduction of evidence of other crimes or bad acts.
| ^Alternatively, even if the statement did introduce evidence of Aulph’s other crimes, the statement is admissible because it tends to show his motive for failing to register. Aulph told his mother that he could not come home because he was in trouble. Thus, the statement establishes Aulph’s motive for absconding supervision and failing to register-beeause he would get in trouble if he came home. Thus, the statement is admissible as it tends to show Aulph’s motive for failing to register and not just his criminal character.
This assignment is without merit.
In his seventh pro se assignment of error, defendant alleges that the trial court erred by persuading the defendant not to testify.
An accused’s right to testify is a fundamental right of constitutional dimension and is protected by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and by La. Const. Art. I, § 16. State v. Crosby, 43,864 (La.App. 2 Cir. 4/8/09), 6 So.3d 1281; State v. Shaw, 06-2467 (La.11/27/07), 969 So.2d 1233.
According to the supreme court in State v. Dauzart, 1999-3471 (La.10/30/00), 769 So.2d 1206, denial of the accused’s right to testify is not amenable to harmless error analysis. The right is either respected or denied, and its deprivation cannot be harmless.
*620 Our review of the trial transcript indicates that the district court neither convinced Aulph to testify nor dissuaded him from doing so. The district court engaged in a lengthy discussion with Aulph about the potential problems that could arise from his decision to testify. Specifically, the |1Rdistrict court was concerned that Aulph might answer a question in such a way as to open the door for the state to question him about his prior crimes. The court was particularly concerned that the state may be able to question him about the sexual battery crime for which it was believed that Aulph fled to Tennessee.
After informing Aulph of its concerns, the district court held two recesses so that the defendant could discuss the potential issues with his attorney. It was only after meeting with his trial counsel that the defendant decided not to testify. Thus, the record reflects that Aulph’s decision against testifying was made only after thoughtful consideration and discussion with his trial counsel. This assignment of error is without merit.
In his final pro se assignment of error, the defendant alleges that the trial court erred by not following the elements of La.Code. Proc. Ann. Art. 894.1 (the sentencing guidelines) and for changing criminal facts. Aulph claims the trial court changed the facts about his criminal history and did not consider any relative mitigating circumstances when imposing his sentence.
The claim of excessive sentence has already been addressed in assignment of error number one and will not be readdressed. Our review of the trial and sentencing transcript indicates that there is no merit to the claim that the trial court changed the criminal facts of the defendant’s case. As such, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. 2008 La. Acts No. 816, § 1.