Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,131-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

MICHAEL DEON RILEY                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 382,248

Honorable Michael A. Pitman, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Annette Fuller Roach

JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney

MARGARET E. RICHIE GASKINS
SAMUEL S. CRICHTON
CHRISTOPHER BOWMAN
Assistant District Attorneys

* * * * *

Before STEPHENS, MARCOTTE, and ELLENDER, JJ.

**ELLENDER, J.**

Michael Riley ("Riley") was found guilty of three crimes: 1) the second degree murder of Daron Hardin ("Hardin"); 2) the attempted second degree murder of Jacqueline Lee ("Lee"); and 3) possession of a firearm by a convicted felon. He received sentences of life in prison, 50, and 20 years, all to be served at hard labor, consecutively, and without the benefit of parole, probation, or suspension of sentence. Riley now appeals, arguing the trial court erred by allowing evidence of other crimes, thereby rendering the evidence insufficient to sustain the guilty verdicts. Finding no merit in Riley's argument, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of April 2, 2021, Lee and Hardin, who were romantically involved, went to Ken Anderson's ("Anderson") home on Powell Street in Shreveport. They intended to celebrate Anderson's birthday and also check on the progress of some repairs Anderson was making to Hardin's truck. While Hardin and Anderson were discussing the truck repairs outside the home, Lee walked to the end of the driveway, where she saw Riley, whom she recognized as a longtime friend of her daughter's. As Riley approached the two men, Hardin held up his hand and gestured for Riley not to interrupt the conversation between himself and Anderson. Lee noticed Riley's body language immediately changed, which made her uneasy. She suggested to Hardin they should leave and, shortly thereafter, the two began walking toward another friend's house a few blocks away.

As they were walking down Singletary Street, Lee saw a dark sedan turn onto Singletary and proceed toward them. Hardin told Lee to move to the inside position, placing himself between Lee and the street. Lee heard

gunfire, saw Hardin fall, felt a burning sensation in her shoulder, and fell into the roadside ditch. She tried to get up to find Hardin but fell down. As she tried to get up again, she looked toward the street and saw Riley's face in the vehicle, illuminated by the muzzle flashes from continued gunfire. Lee then attempted to walk down the street to get help but passed out. Upon regaining consciousness, she called 911.

When paramedics arrived, Hardin was dead from what was determined to be a single intermediate range gunshot wound that entered his upper back, passed through both lungs, and lodged in his chest wall. Police found three .40 caliber and one 9 millimeter shell casings near the area of the shooting on Singletary Street.

Paramedics transferred Lee to the hospital for treatment of gunshot wounds to her shoulder and, while there, she was also questioned by police. She was able to give investigating officers some preliminary information about the shooting but, upon hearing of Hardin's death, Lee's distress rendered her unable to answer any more questions. Approximately one week later, Lee contacted the Shreveport Police Department ("SPD"), gave a statement to investigators, named Riley as the shooter, and positively identified him in a photographic lineup.

Prior to trial, Riley filed a notice of intent to offer an alibi defense claiming he was at the home of Freddy Young at the time of the shooting. In response, the State filed a motion notifying Riley of its intent to present evidence pursuant to La. C.E. art. 404(B), in the form of testimony given by Deaira Robinson ("Robinson"), Riley's girlfriend, whom he attempted to shoot a couple of days after shooting Hardin and Lee. At the hearing on the State's motion, the trial court found Robinson's testimony recounting

2

Riley's attempt to shoot her proved he had the opportunity, intent, and preparation to possess a firearm as a convicted felon, as well as the requisite knowledge, identity, and absence of mistake or accident. No objection was made to the court's ruling on the motion.

At trial, Robinson testified that on April 4, 2021, she picked Riley up in her vehicle. Shortly after he got into her car, Riley began crying and he told Robinson he "shot a guy on Singletary, and he still had the gun in the car with me." Robinson believed Riley was referring to the shooting of Hardin and Lee as she previously heard "on the street" that Riley was the shooter. Robinson stated she actively tried to stop Riley from confessing to her, telling him repeatedly to stop talking about it. Riley then attempted to discharge a firearm he had with him out the window of her vehicle, causing them to argue. He got out of the car and Robinson followed, telling him to just come into the house with her. Riley became more upset, told Robinson to leave him alone, pointed the gun at her, threatened to kill her, and tried to shoot her. The gun would not fire, and Robinson was able to push Riley down and flee. After she escaped, Robinson called Crime Stoppers and identified Riley as the person who shot Hardin and Lee, and reported Riley's attempt to shoot her as well. Robinson also called the Office of Probation and Parole and identified Riley, who she believed to be on active probation, as the individual who shot Hardin and Lee. Robinson provided the same information to the police when questioned.

On cross-examination, Robinson was asked about several jail phone calls she had with Riley in which Robinson told Riley she knew he did not shoot Hardin and Lee because he was with her at the time. Robinson

3

testified she just told Riley what he wanted to hear when she spoke to him on the phone because she was afraid of Riley after he tried to shoot her.

Several other recorded jail phone calls were also played and entered into evidence without objection. These calls were determined to be made by Riley, using the personal identification number ("PIN") associated with another inmate, presumably for the purpose of concealing the information discussed. The recordings of these calls revealed Riley asking for assistance from several persons to dissuade Anderson and Lee from appearing in court at his trial.

While Robinson did not recall seeing Riley drive a dark sedan like the one Lee described, Cpl. Adam McEntee with SPD testified that when he took Anderson home following his interview with police, Riley drove by Anderson's house in a dark sedan. Because of the Crime Stoppers tip, Cpl. McEntee stated he wanted to question Riley, so he tried to flag him down. Riley saw Cpl. McEntee, but sped up and drove away. Another officer with Cpl. McEntee got a picture of Riley speeding away from Anderson's street driving the dark sedan.

As to the possession of a firearm by a convicted felon charge, Sgt. John Madjerick with SPD testified Riley's fingerprints matched those taken from Riley following his November 14, 2011, conviction for illegal use of a weapon.

The jury returned a unanimous guilty verdict for each of the charged offenses. The trial court then sentenced Riley to serve life in prison for the second degree murder of Hardin, 50 years for the attempted second degree murder of Lee, and 20 years for possession of a firearm by a convicted felon. The sentences were ordered to be served at hard labor, consecutively, and

4

without the benefit of parole, probation, or suspension of sentence. This appeal followed.

## DISCUSSION

In his sole assignment of error, Riley contends the trial court should not have allowed the State to introduce evidence of his subsequent attempt to shoot Robinson in the days immediately following the shooting. He argues the State failed to establish an exception to La. C.E. art. 404(B) that would render Robinson's testimony about Riley's attempt to kill her admissible because his alleged possession of a gun on April 4, 2021, does not prove he was in possession of a gun on April 2, 2021. Additionally, while Riley does not explicitly ask this court to consider the sufficiency of the evidence presented against him, he clearly contends that but for the improperly admitted character evidence, the guilty verdicts would not have been reached because the jury would not have considered the other evidence presented as sufficient.

Riley further claims even if Robinson's testimony about his attempt to shoot her was appropriately admitted, the trial court failed to determine whether the probative value of the evidence was outweighed by its prejudicial effect. Riley argues Robinson's testimony about his attempt to shoot her was more prejudicial than probative, and the admission of other crimes evidence was not harmless because it improperly bolstered Robinson's testimony.

The State contends the trial court's ruling allowing Robinson's testimony about Riley's attempt to shoot her was correct, and the record shows the trial court did weigh the probative value of the evidence prior to issuing its ruling. The State argues Riley's attempt to shoot Robinson was

5

admissible under the *res gestae* doctrine as it could not present a complete narrative to the jury without including her testimony about Riley's confession and his subsequent attempt to shoot her because her Crime Stoppers tip, which was made prior to Lee's full statement to police and prior to her identification of Riley as the shooter, provided law enforcement with the first real break in its investigation. The State further contends there was no way for it to rebut the defense's attempts to impeach Robinson's testimony and explain why her statements to Riley were inconsistent with her testimony, other than to allow Robinson to testify that she was afraid of Riley because he tried to shoot her after he confessed to shooting Hardin and Lee.

Finally, the State claims even if the trial court did err in allowing the introduction of Robinson's testimony, it would constitute harmless error because Riley could have been convicted of all three offenses based on Lee's testimony alone.

*Sufficiency of the Evidence*

Although it is not designated as an assignment of error, sufficiency of the evidence forms an integral part of Riley's argument, the implication being that without the allegedly improper evidence being admitted, the jury would have been less likely to believe the testimony given by Lee and Robinson and, therefore, less likely to return a guilty verdict. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. *State v. Hearold*, 603 So. 2d 731 (La. 1992). If the entirety of the evidence admitted at trial is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing

6

court must then consider the assignments of trial error. *Id.* The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *State v. Ramsey*, 55,491 (La. App. 2 Cir. 2/28/24), 381 So. 3d 308, *writ denied*, 24-00379 (La. 10/1/24), 393 So. 3d 865.

Riley's three convictions are defined as follows:

1) Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1);

2) Attempted second degree murder is when any person who, having a specific intent to kill, does or omits an act for the purpose of and tending directly toward killing the victim. La. R.S. 14:27; La. R.S. 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on specific intent to kill or to inflict great bodily harm, attempted second degree murder requires specific intent to kill. *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So. 2d 434; and

3) Possession of a firearm by a convicted felon (at the time of Riley's offenses) made it unlawful for any person convicted of a felony crime of violence as defined in La. R.S. 14:2(B) to possess a firearm or carry a concealed weapon. La. R.S. 14:95.1(A).

After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of all three crimes beyond a reasonable doubt. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness, and a reviewing court accords great deference to a fact finder's decision to accept or reject the testimony of a witness in whole or in part. *Ramsey*, *supra*; *State v. Palmer*, 45,627 (La. App. 2 Cir. 1/26/11), 57 So. 3d 1099, *writ denied*, 11-0412 (La. 9/2/11), 68

7

So. 3d 526. Lee identified Riley as the person who shot her and killed Hardin. Riley confessed to shooting a man on Singletary Street when he spoke to Robinson, who testified to the same at trial, and he also admitted to Robinson being in possession of the murder weapon. The State proved Riley's prior conviction for a felony crime of violence, as well as his possession of a firearm on the date of the shooting and when he confessed to being the shooter. As such, the State met its burden of proving Riley killed Hardin, intended to kill Lee, and illegally possessed a firearm as a convicted felon. Riley's arguments as to the sufficiency of the evidence lack merit.

*Admission of Other Crimes Evidence*

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. However, it may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for those purposes, or when it relates to conduct that constitutes an integral part of the act that is the subject of the present proceeding. La. C.E. art. 404(B); *State v. Warren*, 56,041 (La. App. 2 Cir. 12/18/24), ____ So. 3d ____, 2024 WL 5149817; *State v. Langston*, 43,923 (La. App. 2 Cir. 2/25/09), 3 So. 3d 707, *writ denied*, 09-0696 (La. 12/11/09), 23 So. 3d 912. In order to be admissible under an exception listed in La. C.E. art. 404(B), the evidence must have some independent relevance or be an element of the crime charged and, further, must be a genuinely contested issue at trial. *Langston, supra*.

8

The trial court articulated its reasons for finding the La. C.E. art. 404(B) evidence relevant apart from merely showing Riley's bad character. It found the evidence of Riley's subsequent crimes tended to prove he had the opportunity, intent, and preparation to possess a firearm as a convicted felon, as well as the requisite knowledge, identity, and absence of mistake or accident. As the State noted, without Robinson's testimony about Riley's attempt to shoot her, and his admission to being in possession of the murder weapon, the State would not have been able to refute Riley's attempts to impeach Robinson with the recorded jail calls between the two when she claimed to be with him in another location at the time of the shooting. Further, the record supports the State's argument that the probative value of Robinson's testimony outweighs the possible prejudicial effect. Finally, we note no contemporaneous objection was made by the defense to the trial court's ruling on the State's motion. For these reasons, the admission of this other crimes evidence was not in error.

Even if the portion of Robinson's testimony involving Riley's attempt to shoot her two days after the shooting of Hardin and Lee was not properly admitted, the erroneous admission of other crimes evidence is subject to the harmless error analysis. *Langston, supra*. The test for determining harmless error is whether the reviewing court may conclude that the error was harmless beyond a reasonable doubt, or whether the guilty verdict actually rendered in this trial was surely unattributable to the error. *Id*. This record supports that even without Robinson's testimony about Riley trying to shoot her, the evidence presented was more than sufficient to support each of Riley's convictions.

9

Riley does not contest the portion of Robinson's statement wherein Riley told Robinson he "shot a guy on Singletary, and he still had the gun in the car with me." Riley's confession to committing the shooting on Singletary Street, with a weapon still in his possession, would be admissible as a statement against interest. La. C.E. art. 804(B)(3); *State v. Mays*, 51,552 (La. App. 2 Cir. 8/16/17), 244 So. 3d 607, *writ denied*, 17-1640 (La. 5/25/18), 243 So. 3d 565; *State v. Aulph*, 47,966 (La. App. 2 Cir. 5/22/13), 114 So. 3d 610.

For the reasons above, this assignment of error lacks merit.

*Errors Patent*

As Riley notes, the record does not show he was arraigned on the charges for which he was tried and convicted. However, as pointed out by the State, a failure to arraign the defendant is waived if the defendant proceeds to trial without objecting. La. C. Cr. P. art. 555; *State v. Flanagan*, 32,535 (La. App. 2 Cir. 10/29/99), 744 So. 2d 718. Since no objection was made, any defect has been waived.

While Riley did not raise any errors in regard to his sentence, there is an error patent regarding the trial court's imposition of an illegally lenient sentence. For Riley's convictions for possession of a firearm by a convicted felon, the trial court failed to impose the mandatory fine of not less than $1,000, and not more than $5,000 pursuant to La. R.S. 14:95.1. An illegally lenient sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882(A). This court, however, is not required to take such action. *State v. Dock*, 49,784 (La. App. 2 Cir. 6/3/15), 167 So. 3d 1097, citing *State v. Young*, 46,575 (La. App. 2 Cir. 9/21/11), 73 So. 3d 473, *writ denied*, 11-2304 (La. 3/9/12), 84

10

So. 3d 550. Since this court is not required to take action, the record supports Riley was likely indigent, the state has not objected to the error, and the defendant is not prejudiced in any way by the failure to impose the mandatory fine, we decline to impose the fine. *Id.*; *State v. Holmes*, 48,535 (La. App. 2 Cir. 1/15/14), 130 So. 3d 999.

## CONCLUSION

For the foregoing reasons, we affirm the convictions and sentences of Michael Riley.

**AFFIRMED.**